### In re Michael S. THOMPSON and Crystal Lee Thompson, Debtors.

### No. 6:11–bk–01403–ABB.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Aug. 29, 2011.

Jimmy D. Crawford, Boyette, Cummins & Nailos, PLLC, Clermont, FL, for Debtors.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Motion to Dismiss (Doc. No. 24) filed by Donald F. Walton, the Acting United States Trustee for Region 21 ("UST"),

seeking dismissal of this case filed by the Debtors Michael S. Thompson and Crystal Lee Thompson (collectively, "Debtors") pursuant to 11 U.S.C. Sections 707(b)(1), 707(b)(2) and 707(b)(3)(B). A final evidentiary hearing was held on June 8, 2011 at which Debtors, their counsel, and counsel for the UST appeared. The parties, pursuant to the Court's directive, filed post-hearing briefs.

The UST's Motion is due to be granted for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

### FINDINGS OF FACT

Debtors filed a joint Chapter 7 petition on February 2, 2011 ("Petition Date") accompanied by Schedules, a Statement of Financial Affairs, Statement of Intention, and a Chapter 7 Statement of Current Monthly Income and Means–Test Calculation ("Form 22A Means Test") (Doc. No. 1).

Mr. Thompson was a senior systems engineer at a telecommunications company prior to October 2010. He had a $120,000.00 annual salary and earned an annual bonus of up to forty percent of his salary. He had been unemployed for approximately four months on the Petition Date. He was offered a new position as a network engineer with a new employer two weeks after Debtors filed for bankruptcy; he is currently employed at this job and attends on-line courses offered by an accredited university. Mr. Thompson's current salary is $75,000.00 annually.

Mrs. Thompson is a nurse. She has been employed by her current employer for eight years. Her income is approximately $75,000.00 annually.

Debtors' debts are primarily consumer debts consisting of two home mortgages on a property at 12351 Scottish Pine Lane, Clermont, Florida ("the Clermont Property"), medical bills, automobile loans, credit cards, and student loans. Debtors' original Schedule F listed general unsecured debts totaling $155,172.12 and the Schedule D listed secured debts totaling $356,686.19, of which $335,295.00 is the home mortgage debt. Debtors' original Schedule E listed no unsecured priority debts. Debtors' Statement of Intention designated the Clermont Property as "Surrendered."

Debtors' original Form 22A Means Test states "The presumption does not arise." Debtors' combined average monthly income is stated as $8,725.65. Debtors have two dependent children and are above median family income for a family of four in Florida. Debtors listed expenses totaling $8,797.96 ($72.31 more than their income) on their original Form 22A Means Test, including payments to Wells Fargo on a mortgage loan secured by the Clermont Property.

Debtors' Section 341 meeting was held on March 11, 2011. Debtors testified they had surrendered the Clermont Property and moved to a rental home. The Chapter 7 Trustee declared this a no asset case.

The UST filed his Motion to Dismiss on April 20, 2011 (Doc. No. 24), seeking dismissal of this case as an abusive filing on the bases: (1) a presumption of abuse arises pursuant to Section 707(b)(2) of the Bankruptcy Code, (2) the presumption of abuse is not rebutted by special circumstances, and (3) the totality of the Debtors' financial situation demonstrates abuse pursuant to Section 707(b)(3)(B).

Debtors filed no response to the Motion to Dismiss but filed amended schedules and an amended Form 22A Means Test on April 26, 2011 (Doc. No. 26), transferring $30,825.00 of student loan debt from Schedule F (Unsecured Nonpriority

Claims) to Schedule E (Unsecured Priority Claims) and amending income and expenses on Schedules I & J.

The Amended Form 22A Means Test states, "The Presumption Does Not Arise," based upon a negative monthly disposable income of $2,079.76 (Doc. No. 26). It sets forth a combined monthly income of $10,981.01 and Total Allowed Expenses of $13,060.77. The expenses included $3,054.00 on the first and second mortgages encumbering the surrendered Clermont Property ($2,122.00 to Wells Fargo and $932.00 to Nationstar Mortgage) and $513.75 on student loans Debtors assert should be considered priority claims.

### Means Test

This case is governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[1] BAPCPA, among other things, broadened the standard for dismissal of Chapter 7 cases from "substantial abuse" to "abuse" and created a rebuttable presumption of abuse.

An abuse determination pursuant to Section 707(b)(2) turns upon a mathematical calculation. Every above-median income debtor is required to file Official Form 22A entitled "Chapter 7 Statement of Current Monthly Income and Means–Test Calculation," which is the key component in determining whether a presumption of abuse arises. A filing is presumed abusive if the current monthly income, less allowed expenses, is greater than BAPCPA's statutory thresholds for disposable income.[2] A Chapter 7 filing is presumed abusive if there is disposable monthly income of $195.00 or more (at least $11,725.00 to fund a sixty-month plan).

Allowable deductions from monthly income include: (i) statutorily prescribed monthly expenses, including living expenses as set by national and local standards prescribed by the Internal Revenue Service; (ii) certain "reasonably necessary" actual monthly expenses;[3] (iii) payments "contractually due to secured creditors in each month of the 60 months following the date of the petition;" and (iv) payments on priority claims (calculated as the total amount of debts entitled to priority, divided by 60). 11 U.S.C. § 707(b)(2)(A).

### UST's Position

The UST argues Debtors understated their income; claimed unallowable expenses by including payments on loans secured by the surrendered Clermont Property and payments on student loans; and overstated their tax, childcare, telecommunications, and energy expenses. A properly-completed Form 22A Means Test would demonstrate Debtors have net monthly disposable income greater than the statutorily defined threshold; this results in a presumption of abuse pursuant to the bankruptcy code.

### Debtors' Position

Debtors agree with the UST their income on Amended Form 22A should be $11,529.54 per month and concede the presumption of abuse arises if the mortgage expense is not allowed. They claim they are entitled to list the payments on loans secured by the Clermont property because those payments were "contractually due to secured creditors in each month of the 60 months following the date of the petition,"

---

1. Pub. L. No. 109–8, 119 Stat. 23 (2005).

2. A presumption of abuse arises, pursuant to the statutory calculation of 11 U.S.C. Section 707(b)(2)(A), where a debtor's current monthly income, less allowed expenses, and multiplied by 60 is not less than the lesser of: (i)

twenty five percent of the debtor's nonpriority unsecured claims in the case, or $7,025.00, whichever is greater; or (ii) $11,725.00.

3. "[T]he monthly expenses of the debtor shall not include any payments for debts." 11 U.S.C. § 707(b)(2)(A)(ii)(I).

notwithstanding their surrender of the Clermont Property.

They argue student loan payments are correctly considered payments on priority claims because student loan debt is not dischargeable absent a showing of undue hardship and student loans should be considered a special circumstance if student loan debt cannot be listed as priority debt.

The UST's position on their other expenses is not opposed by Debtors. They adopt the UST's alternative numbers.

### Mortgage Payments

The $3,054.00 expense Debtors list for mortgage payments on the Clermont Property is not allowable. The payments on loans secured by the Clermont Property are not actually-incurred expenses and do not meet the statutory definition of "payments on account of secured debts." 11 U.S.C. 707(b)(2)(A)(iii).

Debtors ceased making these payments in the Fall of 2010, prior to filing their petition, when Mr. Thompson learned he would be losing his job. Debtors could not meet the mortgage obligations, surrendered the Clermont Property, and moved to a rental home. They do not intend to make payments on these loans in the future.

Debtors may not claim an expense for mortgage payments they will not make. Debtors are entitled to the $918.00 IRS standard expense for housing and utilities.

### Student Loan Debt

The student loan debt is not properly claimed as priority debt on Debtors' Form 22A Means Test. Student loan debt is not dischargeable absent a showing by a debtor that "excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).

The high burden a debtor must prove to establish an undue hardship on himself and his dependents in order to discharge student loan debt does not qualify that debt as priority debt, payable before other unsecured debts.

Payments on nonpriority unsecured debts are not allowable expenses on Form 22A Means Test. Debtors' student loan debt is nonpriority unsecured debt; it is not an allowable expense.

A properly completed Form 22A Means Test would include a deduction of $918.00 for housing and utility expense and would not include any deduction for student loan debt.

These adjustments and the others asserted by the UST and not opposed by the Debtor yield a monthly disposable income of $2,463.94, which could be used to repay Debtors' creditors. This amount constitutes disposable income of $147,836.40 for a sixty-month period, an amount greater than $11,725.00 and $38,168.03 (twenty-five percent of Debtors' total non-priority unsecured debts of $152,672.12).

A presumption of abuse arises pursuant to Section 707(b)(2)(A).

### Special Circumstances

Debtors argue they rebut the presumption of abuse with special circumstances as allowed by Section 707(b)(2)(B) because they have extraordinary medical expenses and significant nondischargeable student loan debt.

The presumption of abuse has not been rebutted. Debtors did not substantiate any medical expense in addition to those expenses already listed on their Amended Form 22A Means Test. Mrs. Thompson testified Debtors' Amended Form 22A Means Test lists all the family's current medical expenses. Debtors claim Mr. Thompson's and the children's medical conditions are unpredictable and may cause the family to incur additional unexpected expenses in the future. Speculative expenses are not properly considered special circumstances.

The actual monthly payment on Debtors' student loans is $250.00, not $513.75. Debtors have not established this monthly payment is a necessary and reasonable expense for which there is no reasonable alternative. They did not establish payment of the student loans cannot be deferred or placed in forbearance; the loans cannot be consolidated to yield a lower monthly payment; or they cannot lower their monthly payments through participation in the William D. Ford Federal Direct Loan Program for direct consolidation and income-contingent repayment.

Debtors cannot rebut the presumption of abuse because, even assuming the $250.00 monthly student loan payment (the only expense for which they provided substantiation) were a necessary and reasonable expense for which there is no reasonable alternative, the expense would not decrease Debtors' monthly disposable income sufficiently that, when multiplied by 60, the monthly disposable income would be less than $38,168.03 (twenty-five percent of Debtors' total non-priority unsecured debts of $152,672.12) or $11,725. 11 U.S.C. § 707(b)(2)(B)(iv). Reducing Debtors' monthly disposable income by $250.00 yields a monthly disposable income of $2,213.94 monthly, or $132,836.40 over sixty months.

The presumption of abuse exists. Debtors have not rebutted the presumption by establishing special circumstances exist.

### Totality of the Circumstances

The UST seeks dismissal of this case based on the totality of the circumstances of Debtors' financial situation. The core inquiry in the totality of the circumstances test is whether the debtors have a meaningful ability to repay their unsecured debts. A court deducts from debtors' income amounts reasonably necessary to be expended for the maintenance or support of debtors or their dependents to determine the disposable income available to pay creditors. Post-petition events are relevant to a totality of the circumstances analysis.

The Amended Form 22A Means Test is not accurate. Debtors have substantial monthly disposable income after removal of disallowed expenses and adjustment of overstated expenses.

Debtors' expense claims for mortgage payments for the Clermont Property are not allowable. Debtors may not claim secured loan payments they will not actually make. The payments on loans secured by the Clermont Property are not actually-incurred expenses and not necessary for Debtors' maintenance or support. Debtors ceased making payments on the loans and moved into a rental house, reducing the impact of housing expense on their disposable income significantly.

Debtors' monthly housing expenditures listed in their Amended Form 22A Means Test are overstated. Their total housing and utilities expense should be $918.00, the IRS standard expense for housing and utilities.

Debtors claim a deduction of $513.75 for student loan payments in Line 44 of their Amended Form 22A Means Test.[4] The deduction is not allowable. Debtors have not established student loan repayment is reasonably necessary for their maintenance or support or that of their dependents.[5]

---

4. Line 44 is for prepetition priority claims. Debtors' student loan debt is nonpriority unsecured debt. *See supra* at 6–7. Payments on nonpriority unsecured debts are not allowable expenses.

5. Debtors' actual monthly student loan payment is not $513.75; it is $250.00. Debtors would have monthly disposable income of approximately $2,000.00 if the deduction were allowed, at either the claimed or actual

They did not establish payment of the student loans cannot be deferred or placed in forbearance; the loans cannot be consolidated to yield a lower monthly payment; or they cannot lower their monthly payments through participation in the William D. Ford Federal Direct Loan Program for direct consolidation and income-contingent repayment.

The possibility of substantial additional medical costs to treat Mr. Thompson's or the children's medical conditions is not a proper consideration. Unknown or speculative expenses are not relevant in a Section 707(b)(3)(B) analysis.

The UST has established Debtors have monthly income of $11,529.54 and allowable monthly expenses of $9,065.60, resulting in monthly disposable income of $2,463.94.

Debtors have sufficient disposable income to repay their debts. They have the ability to propose a Chapter 13 plan with payments totaling $88,701.84 in a thirty-six-month plan or $147,836.40 in a sixty-month plan. The approximate dividend to unsecured creditors, exclusive of Chapter 13 administrative expense deductions, in a thirty-six-month plan is fifty-eight percent and ninety-seven percent in a sixty-month plan.

The presumption of abuse exists and is not rebutted by special circumstances. Debtors have sufficient disposable income to repay their debts. Granting Debtors relief would be an abuse of the provisions of Chapter 7. Their case is due to be dismissed.

### CONCLUSIONS OF LAW

A Chapter 7 case filed by an individual with primarily consumer debts is subject to dismissal, or conversion with the debtor's consent, if, after notice and a hearing, a Court "finds that the granting of relief amount. This is sufficient disposable income would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1).

The standard for dismissal pursuant to Section 707(b)(1) prior to BAPCPA was "substantial abuse." The 2005 Bankruptcy Code amendments, the "Bankruptcy Abuse Prevention and Consumer Protection Act," were intended to curb what was perceived to be abusive bankruptcy practices, and to ensure debtors with the ability to repay their debts do so:

> The purpose of the bill [S. 256] is to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors ... The heart of the bills' consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford.

H.R. REP. No. 109–31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89.

### *Section 707(b)(2): The Means Test*

Congress created in Section 707(b) a needs-based test to remedy the "inherently vague" "substantial abuse" dismissal standard. *Id.* at 12, 2005 U.S.C.C.A.N. at 98. A debtor whose household income exceeds the state median income is considered an above-median debtor whose monthly expenses are subject to BAPCPA's strict limitations. 11 U.S.C. § 101(39A) (defining "median family income"); *In re Wilson,* 383 B.R. 729, 731 (8th Cir. BAP 2008).

Debtors' household income exceeds the state median income for a family of four in Florida. They are subject to the expense to repay their unsecured debts.

limitations of 11 U.S.C. Section 707(b)(2)(A).

A means test is employed to establish whether there is a presumption of abuse:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—
>
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or
>
> (II) $11,725.

11 U.S.C. § 707(b)(2)(A)(i). Subsections (ii) through (iv) of Section 707(b)(2)(A) define the allowable monthly expenses to be used in the means test calculation.

■ Payments on nonpriority unsecured debts are not allowable expenses. "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." 11 U.S.C. § 707(b)(2)(A)(ii)(I). Payments on secured and priority debts are allowable deductions. 11 U.S.C. § 707(b)(2)(A)(iii), (iv).

### Mortgage Payments

■ Debtors claim $3,054.00 in monthly expenses for mortgage payments on the surrendered Clermont Property. The parties disagree as to whether those payments are allowed under Subsection (iii) of Section 707(b)(2)(A), which states in relevant part:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> (I) the total of all amounts scheduled as contractually due to secured creditors on each month of the 60 months following the date of the petition;

11 U.S.C. § 707(b)(2)(A)(iii).

The UST argues the Means Test is a tool that allows the court to assess a debtor's monthly income and projected allowable expenses for the sixty-month period following the bankruptcy filing to determine whether the debtor's disposable income is above the statutory threshold for presumptive abuse. Debtors argue the Means Test is a snapshot of their income and contractually-due expenses as of the Petition Date and assert because payments were due on the mortgage loans secured by the Clermont Property, they are entitled to list the payments as expenses, without consideration to whether they intended to make or actually made those payments.

■ Debtors may not claim an expense for secured loan payments they will not actually make. The payments on loans secured by the Clermont Property are not actually-incurred expenses. They do not meet the statutory definition of "payments on account of secured debts." 11 U.S.C. § 707(b)(2)(A)(iii). They are not permissible deductions.

■ "Because Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, *a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category.*" *Ransom v. FIA Card Servs.,* —— U.S. ——, 131 S.Ct. 716, 725, 178 L.Ed.2d 603 (2011) (emphasis added) (interpreting Section 707(b)(2)(A)(ii)(I)). The Means Test is intended to give the court guidance as to whether debtors have sufficient disposable income to pay their creditors. *Id.* Allowing debtors to claim expenses they will not actually pay frustrates legislative intent and creates an inaccurate picture of their financial reality.

The language of Section 707(b)(2)(A)(iii) supports the conclusion payments not actually made are not properly deducted from a debtor's income as a part of the Means Test. The statute defines "payments on account of secured debts" as those payments "contractually due to secured creditors in each month of the 60 months following the date of the petition." 11 U.S.C. § 707(b)(2)(A)(iii). Creditors to whom payments are not being made and the collateral is surrendered are no longer "secured creditors." Debtors will not owe them contractually-established payments in each of the sixty months following the bankruptcy filing.

Whether the payments on loans that were secured by the Clermont Property are actually-incurred expenses is a factual question. They are not. Debtors ceased making payments on these loans and do not intend to resume making payments on them. They surrendered the Clermont Property, moved into a rental house, and reduced their monthly housing costs significantly. The monthly housing expenditures listed in their Amended Form 22A Means Test are overstated. Debtors' allowable total housing and utilities expense is $918.00, the IRS standard expense for housing and utilities.

### Student Loan Debt

Debtors improperly claim student loan debt as priority debt on their Form 22A Means Test. They assert student loan debt should be treated as priority debt and allowed as a monthly expense pursuant to Section 707(b)(2)(A)(iv) because student loan debt is nondischargeable.

■ Student loan debt is not dischargeable absent a showing by a debtor that "excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The high burden a debtor must prove to establish an undue hardship on himself and his dependents in order to discharge student loan debt does not qualify that debt as priority debt, payable before other unsecured debts. Priority (receiving payment before other kinds of claims) and nondischargeability (remaining an obligation of the debtor after discharge) are not the same.

Section 726 governs order of distribution of property of the estate in a Chapter 7 case. 11 U.S.C. § 726. It requires payment of priority claims first, as defined in Section 507. 11 U.S.C. § 726(a)(1). Student loan debt is not one of the ten categories of debt defined in Section 507 as "Priorities." 11 U.S.C. § 507.

■ Student loan debt is nonpriority debt and is not an expense allowed on Form 22A Means Test pursuant to either Section 707(b)(2)(A)(ii) or (iv).

A properly completed Form 22A Means Test would allow a deduction of $918.00 for housing and utility expense and would not deduct any expense for student loan debt. These adjustments and the others asserted by the UST (not opposed by the Debtor) yield a monthly disposable income of $2,463.94 (an amount greater than $195.00 monthly) which could be used to repay Debtors' creditors. This amount constitutes disposable income of $147,836.40 for a sixty-month period, an amount greater than $11,725.00 and $38,168.03 (twenty-five percent of Debtors' total non-priority unsecured debts of $152,672.12). A presumption of abuse arises pursuant to Section 707(b)(2)(A).

### Special Circumstances

The Debtors' debts are primarily consumer debts and the presumption of abuse has arisen. The Debtors assert potential future medical expenses and their student loan debt constitute "special circumstances" rebutting the abuse presumption.

The presumption of abuse is rebuttable upon a showing by a debtor of "special circumstances":

In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

11 U.S.C. § 707(b)(2)(B)(i). A debtor, to establish special circumstances, must:

(ii) ... itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. § 707(b)(2)(B)(ii), (iii).

■ A debtor must further establish the additional expenses or adjustments:

cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $7,025, whichever is greater; or

(II) $11,725.

11 U.S.C. § 707(b)(2)(B)(iv). A Bankruptcy Court has broad discretion to determine on a case by case basis whether special circumstances exist. *In re Templeton,* 365 B.R. 213, 216 (Bankr.W.D.Okla.2007).

■ Debtors have not established special circumstances to rebut the presumption of abuse. Debtors did not substantiate any medical expense in addition to those expenses already listed on their Amended Form 22A Means Test. Mrs. Thompson testified Debtors' Amended Form 22A Means Test lists all the family's current medical expenses. Debtors argue Mr. Thompson's and the children's medical conditions are unpredictable and may cause the family to incur additional unexpected expenses in the future. Speculative expenses are not properly considered special circumstances.

■ The actual monthly payment on Debtors' student loans is $250.00, not $513.75. Debtors did not establish this monthly payment is a necessary and reasonable expense for which there is no reasonable alternative. They did not establish payment of the student loans cannot be deferred or placed in forbearance; the loans cannot be consolidated to yield a lower monthly payment; or they cannot lower their monthly payments through participation in the William D. Ford Federal Direct Loan Program for direct consolidation and income-contingent repayment.

■ They cannot rebut the presumption of abuse because, even assuming the $250.00 monthly student loan payment (the only expense for which they provided substantiation) were a necessary and reasonable expense for which there is no reasonable alternative, the expense would not decrease Debtors' monthly disposable income sufficiently that, when multiplied by 60, the monthly disposable income would be less than $38,168.03 (twenty-five percent of Debtors' total non-priority unsecured debts of $152,672.12) or $11,725. 11 U.S.C. § 707(b)(2)(B)(iv). Reducing Debt-

ors' monthly disposable income by $250.00 yields a monthly disposable income of $2,213.94 monthly, or $132,836.40 over sixty (60) months—more than the threshold for presumptive abuse.

Debtors have not rebutted the presumption of abuse by establishing special circumstances exist.

### Section 707(b)(3): Totality of the Circumstances

Section 707(b)(3) sets forth two tests for determining abuse:

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal service contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

■ The UST seeks dismissal of this case pursuant to Section 707(b)(3)(B). He does not pursue dismissal on the basis of bad faith.

■ The core inquiry of a Section 707(b)(3)(B) analysis is whether the debtor's financial situation indicates he has the ability to pay a substantial portion of his unsecured nonpriority debts. *In re Henebury*, 361 B.R. 595, 607 (Bankr.S.D.Fla. 2007). The courts analyze whether a debtor has sufficient projected disposable income to fund a hypothetical Chapter 13 plan, thereby making 11 U.S.C. Section 1325 relevant to a Section 707(b)(3)(B) determination. *Id.* at 611. Section 1325(b)(2) defines "disposable income" as:

(2) Current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonable necessary to be expended for such child)

less amounts *reasonably necessary* to be expended—

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed.

11 U.S.C. § 1325(b)(2) (emphasis added).

■ Post-petition pre-discharge events are relevant to a Section 707(b)(3)(B) analysis. *In re Parada*, 391 B.R. 492, 500 (Bankr.S.D.Fla.2008); *In re Henebury*, 361 B.R. at 611.

Debtors' expense claims for mortgage payments for the Clermont Property are not allowable deductions. Debtors may not claim secured loan payments they will not actually make. *In re Parada*, 391 B.R. at 502 (holding "when determining the Debtors' projected disposable income, it is appropriate to exclude these deductions as the payments clearly will not be made going forward, and therefore will not negatively impact the Debtors' disposable income."). The payments on loans secured by the Clermont Property are not actually-incurred expenses and not necessary for Debtors' maintenance or support. Debtors ceased making payments on the loans and moved into a rental house, reducing the impact of housing expense on their disposable income significantly. Their total housing and utilities expense should be $918.00, the IRS standard expense for housing and utilities.

The deductions for student loan payments are not allowable. They are not allowed expenses pursuant to Section 707(b)(2)(A)(ii) and are not deductions allowed as payments on priority debt pursuant to Section 707(b)(2)(A)(iv). They are not reasonably necessary expenses for the Debtors' maintenance or support pursuant to Section 1325(b)(2). Debtors did not establish payment of the student loans cannot be deferred or placed in forbearance;

the loans cannot be consolidated to yield a lower monthly payment; or they cannot lower their monthly payments through participation in the William D. Ford Federal Direct Loan Program for direct consolidation and income-contingent repayment.[6]

■ The undefined cost of possible future medical care for Mr. Thompson or the Thompson children was not an allowable consideration. Facts that are "unknown or highly speculative" are not relevant to the analysis. *In re Parada*, 391 B.R. at 502.

The UST has established Debtors have monthly income of $11,529.54 and allowable monthly expenses of $9,065.60, resulting in monthly disposable income of $2,463.94.

Debtors have a meaningful ability to propose a Chapter 13 plan and repay their debts with payments totaling $88,701.84 in a thirty-six-month plan or $147,836.40 in a sixty-month plan. The approximate dividend to unsecured creditors, exclusive of Chapter 13 administrative expense deductions, in a thirty-six-month plan is fifty-eight percent; in a sixty-month plan, it is ninety-seven percent.

### CONCLUSION

A presumption of abuse arises pursuant to Section 707(b)(2). Debtors have not rebutted the presumption by establishing special circumstances exist.

The UST has established, based on the totality of the circumstances, granting Debtors relief would be an abuse of the provisions of Chapter 7. Debtors have sufficient disposable income to repay their debts.

Debtors' case is due to be dismissed pursuant to Section 707(b)(1), (b)(2), and (b)(3)(B).

**6.** Debtors have sufficient disposable income to repay their unsecured debts even if they are

Accordingly, it is

**ORDERED, ADJUDGED AND DECREED** that the UST's Motion to Dismiss (Doc. No. 24) is hereby **GRANTED** and the above-captioned case shall be **DISMISSED** pursuant to 11 U.S.C. Sections 707(b)(1), (b)(2), and (b)(3)(B). The effective date of this Order is delayed fourteen (14) days to permit the Debtors to convert this case to Chapter 13.

allowed a student loan deduction. *See supra* n.5.