IN RE: Joseph William NAVIN, Valerie Renee Navin, Debtors.

**United States Trustee, Movant,**

v.

**Joseph William Navin, Valerie Renee Navin, Respondents.**

CASE NO. 14–57838–MHM

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed February 10, 2015

Filed February 11, 2015

---

Karen King, King & King Law LLC, Atlanta, GA, for Debtors.

**CONTESTED MATTER**

**ORDER ON MOTION TO DISMISS FOR ABUSE**

MARGARET H. MURPHY, UNITED STATES BANKRUPTCY JUDGE

Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code, initiating this case April 21, 2014; with the petition, Debtor filed initial documents [1] as required by 11 U.S.C. § 521(a) and Bankruptcy Rule 1007(b). The United States Trustee ("UST") filed a *Motion to Dismiss* July 21, 2014, asserting that this case should be dismissed under § 707(b) because a presumption of abuse of the provisions of Chapter 7 arises under § 707(b)(2) and the totality of the circumstances of Debtor's financial situation demonstrates abuse under § 707(b)(3) (Doc. No. 35) (the "Motion").[2] The parties filed a stipulation of facts December 10, 2014 (Doc. No. 48). Hearing was held on the Motion December 15, 2014. At the conclusion of the hearing, the Court adjourned to consider whether further briefing was necessary.

Pursuant to 11 U.S.C. § 707(b), the court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of this chapter." The "Means Test" embodied in 11 U.S.C. § 707(b)(2)(A) provides

(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or

---

1. Section 521(a) and Bankruptcy Rule 1007(b) require a debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs (the "Sched-ules"). Section 521(a) also requires the filing of Debtor's pay advices.

2. On June 30, 2014, the parties stipulated to an extension of time to file a motion to dismiss under § 707(b)(2) (Doc. No. 31). Pursuant to that stipulation, UST's Motion is timely.

(II) $12,475.

Subsection (iii) provides that Debtors' current monthly income may be reduced by

(I) The total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and

(II) Any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

The Means Test is not the final word on whether granting relief would be an abuse of the bankruptcy process; it merely provides a mechanical approach for determining if a presumption of abuse arises. If a presumption arises, a debtor may rebut that presumption pursuant to § 707(b)(2)(B). If a presumption does not arise under § 707(b)(2)(A), the Court may consider whether the "totality of the circumstances ... of the debtor's financial situation demonstrates abuse" under § 707(b)(3). However, at the hearing, the parties sought to limit their arguments to whether a presumption of abuse arises under § 707(b)(2)(A) and reserved their arguments with respect to §§ 707(b)(2)(B) and 707(b)(3). More specifically, the parties dispute whether the Means Test allows Debtors to deduct mortgage and arrearage payments on their residence, which Debtors intend to surrender, and payments on a tax lien. At the hearing, Debtors' counsel also raised the issue of what the applicable household size is for purposes of the Means Test in this case.

### Contractual Payments on the Residence

On Line 42 [3] of their Means Test, Form 22A, Debtors list deductions for debt payments of $6,394.00 per month contractually due to a secured creditor with respect to property at 1420 Rolling Links Drive, Milton, Georgia 30004 (the "Property"), as well as $4,666.67 per month for cure payments which would be required to cure the arrearage on the Property in a Chapter 13 case. However, Debtors have not been making those contractually-due payments—they are approximately $280,000 in arrears on that debt. And Debtors apparently do not intend to make those payments in the future—Debtors filed a *Statement of Intention* with the petition, indicating that Debtors intend to surrender the property, and did not oppose a motion for relief from the automatic stay with respect to the Property. UST argues that those expenses are "phantom" expenses, and that, considering recent precedent from the Supreme Court favoring a realistic view of a debtor's future income and expenses, those "phantom" expenses should be excluded from the Means Test. Debtors argue that the statutory formula for the Means Test is clear.

Trustee relies on *Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) and *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 131 S.Ct. 716, 178

---

**3.** The instructions for line 42 state, "For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, state the Average Monthly Payment, and [indicate] whether the payment includes taxes or insurance. The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60 ...."

L.Ed.2d 603 (2011). *Lanning* stands for the proposition that, when a bankruptcy court calculates a Chapter 13 debtor's projected disposable income for the purposes of confirming a debtor's plan of reorganization, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation. In *Lanning,* the debtor's income during the six months preceding the case included a one-time buyout from her former employer, inflating her "current" income significantly. The Supreme Court concluded that the ordinary meaning of the phrase "projected disposable income" as used in § 1325 necessarily gives courts the discretion to account for "known or virtually certain changes" when the mechanical approach would produce senseless results. "In cases in which the debtor's disposable income is higher during the plan period, the mechanical approach would deny creditors payments that the debtor could easily make." *Lanning,* 560 U.S. at 520, 130 S.Ct. 2464.

The Supreme Court's decision in *Ransom* held that, for the purposes of the Chapter 13 Means Test, a debtor should not be allowed to deduct from his income the IRS guideline expense for car ownership because he did not make loan or lease payments on a vehicle. Although § 707(b)(2)(A)(ii), made applicable to a Chapter 13 case by § 1325(b), allows a debtor to deduct "applicable monthly expense amounts specified under the National Standards and Local Standards," the Supreme Court reasoned in *Ransom* that the expenses listed in the National Standards and Local Standards are "applicable" "only if the debtor has costs corresponding to the category covered by the table."

Courts have disagreed about the application of *Lanning* and *Ransom* to a chapter 7 means test calculation. In *In re*

*Hardigan,* 2012 WL 9703097 (Bankr. S.D.Ga. December 20, 2012) (Davis, J.), the court discussed the question at issue— whether Debtor may claim expenses on the Means Test even with the intent to surrender the collateral—in the context of *Lanning* and *Ransom.* The court read the Supreme Court's decisions narrowly: "[*Lanning* and *Ransom* ] only recognized that once a debtor is in chapter 13, the test for confirmation is a forward-looking one." Noting that both cases turned on interpretation of "projected disposable income"—a phrase not present in § 707(b)(2)—the *Hardigan* court declined to extend the reasoning of the Supreme Court to § 707(b)(2); as a result, for the purposes of the Means Test, *Hardigan* allowed the debtor to deduct from income future payments on a secured debt even though the debtor planned to surrender the collateral. *Id.* at *3; *see, also, In re Rivers,* 466 B.R. 558 (Bankr.M.D.Fla.2012); *In re Sonntag,* 2011 WL 3902999 (Bankr.N.D.W.Va. Sept. 6, 2011); *In re Ng,* 2011 WL 576067 (Bankr.D.Hawaii Feb. 9, 2011); *In re Grinkmeyer,* 456 B.R. 385, 387–89 (Bankr. S.D.Ind.2011). At least one court has attributed this mechanical approach to "the majority of cases" which have considered the issue at hand. *In re Fredman,* 471 B.R. 540 · (Bankr.S.D.Ill.2012) (collecting cases, but disagreeing with the "majority.")

Other courts have argued that the realistic approach of *Lanning* and *Ransom* should be applied to § 707(b)(2). "[W]here the debtors have indicated they are not paying the … mortgages on Schedule J and line 20B(b) of form B22A, have filed a Statement of Intention to surrender the … property, have not contested the lifting of the automatic stay by the mortgage holder, and all other indicia reflect that surrender is forthcoming, it would be absurd to ignore that evidence." *In re Fredman,* 471 B.R. 540 (Bankr.

S.D.Ill.2012); *see, also, In re White,* 512 B.R. 822 (Bankr.N.D.Miss.2014).

The analyses in *Lanning* and *Ransom* turned on language not applicable to the question at hand. In *Lanning,* the Supreme Court hinged its analysis on its interpretation of the phrase "projected disposable income" as used in § 1325; as the court in *Hardigan* correctly noted, that phrase does not appear in § 707(b)(2). Moreover, the analysis in *Ransom* was based on the Court's interpretation of the word "applicable" as used in § 707(b)(2)(A)(ii). While the analysis in *Ransom* may certainly speak to application of § 707(b)(2)(A)(ii) in Chapter 7 cases, the instant question involves the language of § 707(b)(2)(A)(iii), which is markedly different. Subsection (ii) refers repeatedly to a Debtor's "*applicable* expenses" and "*actual* expenses"; subsection (iii), however, refers to "amounts scheduled as contractually due" and "payments . . . necessary . . . in a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence." The reasoning of the *Lanning* and *Ransom* decisions simply does not apply to 11 U.S.C. § 707(b)(2)(A)(iii).

Unfortunately, distinguishing *Hamilton* and *Lanning* leaves a dearth of controlling authority, and few cases in this district have considered the issue at hand. In *In re Walker,* 2006 WL 1314125 (Bankr. N.D.Ga. May 1, 2006), Judge Drake analyzed the language of § 707(b)(2)(A)(iii) and determined that the "plain language of the statute does not require the debtor to reaffirm the secured debt in order to deduct the payment." *In re Hummel,* 2007 WL 7142576 (Bankr.N.D.Ga. Oct. 1, 2007) (Murphy, J.) cited *Walker* and similarly-decided cases in other districts as the ma-jority view and adopted that rule without discussion.

Contrary to *Walker*'s "plain language" analysis, the court in *Fredman* determined that the language of § 707(b)(2) is ambiguous[4], and courts must therefore go beyond the text to determine the statute's application. In support of its assertion that the statute is ambiguous, *Fredman* points to the split in authority, citing the decisions in *In re Clary,* 2012 WL 868717 (Bankr. M.D.Fla. Mar. 14, 2012) and *In re Thompson,* 457 B.R. 872, 880–81 (Bankr.M.D.Fla. 2011) as contrary to the majority view. *Clary,* however, does not discuss the statutory language of § 707(b)(2), instead relying, on *White v. Waage,* 440 B.R. 563, 567 (M.D.Fla.2010) for the conclusion that debtors cannot deduct expenses for surrendered property; *White v. Waage,* in turn, interprets the phrase "projected disposable income" for purposes of the Chapter 13 Means Test. As discussed above, that phrase does not appear in § 707(b)(2). Similarly, to conclude that Debtor may not deduct mortgage payments on a surrendered property for the purposes of § 707(b)(2)(A)(iii), the *Thompson* court cites to *Ransom's* discussion of "applicable" expenses, as used in § 707(b)(2)(A)(ii), without acknowledging that the word "applicable" does not appear in § 707(b)(2)(A)(iii). *See Thompson,* 457 B.R. at 880.

The *Thompson* opinion does highlight potential ambiguity in the language of § 707(b)(2)(A)(iii)(I) by applying a forward-looking approach to the phrase "contractually due to secured creditors in each month of the 60 months following the date of the petition." The *Thompson* court concludes that, if the collateral is surrendered, the creditors are no longer "secured creditors," and the debtor would no longer owe

4. At the hearing, counsel for the United States Trustee referred to *Fredman* as the *only* case to suggest that the language of the statute is ambiguous.

payments "in each month of the 60 months following the date of the petition." However, the statute does not refer to payments actually due to secured creditors; it refers to payments "scheduled as contractually due to secured creditors[.]" The *Fredman* court acknowledged this distinction, stating, "the phrase 'scheduled as' [is] a term of art in bankruptcy parlance that refers to a debtor placing information on the bankruptcy schedules." 471 B.R. at 550. *Fredman* then concluded that, in order to be "scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition," a debt must be reflected on Schedule J and the Statement of Intention, and those documents must reflect that debtor intends to pay the secured creditor on the contractual obligation. *Id.* at 551. This, then, is the potential divergence in the language of the statute: whether the phrase "scheduled as contractually due" should be interpreted to mean (A) listed on Debtor's bankruptcy schedules as contractually due, *or* (B) due by contract to be paid at a time certain in the future. *Compare Fredman*, 471 B.R. at 551, to *Walker*, 2006 WL 1314125 at *4.

*Fredman*'s interpretation of "scheduled as contractually due" is problematic because a debtor's bankruptcy schedules do not list monthly payments "contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition." In Schedule D, a debtor must list secured creditors and the amount of their claim, but not monthly payments, and certainly not a schedule of payments to be made over the next 60 months. In Schedule J, a debtor must list monthly expenses. By comparing expenses listed on Schedule J to creditors listed on Schedule D, one might be able to determine which payments are due to secured creditors, and, in ideal circumstances and with an amortization table in hand, might be able to extrapolate the schedule of payments over 60 months. However, all of that asks quite a lot of the finder of fact to review the accuracy of the Means Test, and assumes Congress used a "term of art" without defining it [5] and without recognizing that that information is not, in fact, "scheduled" in any one of debtor's Schedules. The interpretation in *Walker* is correct:

> "Webster's Dictionary defines the word "schedule" as "to plan for a certain date." The common meaning of 'as contractually due' is that the debtor is legally obligated under the contract ... Accordingly, payments that are "scheduled as contractually due" are those payments that the debtor will be required to make on certain dates in the future under the contract."

2006 WL 1314125 at *3 (internal citations omitted). Debtor's intent to surrender the property does not affect the Chapter 7 Means Test. *Id.*; *In re Hummel*, 2007 WL 7142576 (Bankr.N.D.Ga. Oct. 1, 2007) (Murphy, J.).

Notably, even if the statutory language were ambiguous, the *Fredman* court acknowledges that "little legislative history [exists] to assist the Court." Cases to discuss legislative intent focus on a tension between "the drafters' desire to eliminate judicial discretion, *e.g. In re Rudler*, 576 F.3d 37, 47 (1st Cir.2009) ], with the goal of requiring debtors to pay their debts to the fullest extent they are able. *E.g., In re Ransom*, 131 S.Ct. at 725." *Fredman*, 471 B.R. at 550. *Walker*'s interpretation of § 707(b)(2)(A)(iii) meets those goals, because §§ 707(b)(2)(B) and 707(b)(3) provide a means to consider the debtor's cir-

---

**5.** "When statutory language has not been expressly defined, we are to give that language its common meaning." *In re Fretz*, 244 F.3d 1323, 1327 (11th Cir.2001).

cumstances when the mechanical approach leads to an absurd result. *E.g. In re Hardigan,* 2012 WL 9703097 at *6 (granting summary judgment as to § 707(b)(2), but directing a trial be scheduled as to § 707(b)(3)).

### Further Briefing is Required on Remaining Issues

In addition to the "contractually due" payments discussed above, Debtors list on Line 42 of the Means Test monthly payments of $2,977.38 owed to the IRS and secured by a Federal tax lien. On Line 43,[6] Debtors list $4,666.67 per month in arrearage payments (here, the secured debt on Debtors' residence).

Trustee argues that payments on a tax lien may not be listed on Line 42 or pursuant to § 707(b)(2)(A)(iii)(I) because those payments are not "contractually due." Moreover, the arrearage payments on the Property may not be listed on Line 43 or pursuant to § 707(b)(2)(A)(iii)(II) because that subsection allows a debtor to list "payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of debtor and debtor's dependents, that serves as collateral for secured debts." Trustee argues Debtors cannot avail themselves of that subsection because they are ineligible to be debtors in a case under chapter 13.

Debtors briefly argued that payments on the tax lien may be listed because they are secured debts, and that arrearage payments may be listed because nothing in § 707(b)(2)(A)(iii)(II) requires that a debtor be eligible for chapter 13. Instead of arguing those points thoroughly, Debtors moved on to argue that Debtors' relevant household size is 7, rather than the 5–person household size listed on their Means Test. Because these issues have not been briefed thoroughly, the parties will be given the opportunity to do so.

The parties should also clarify the interplay between § 707(b)(2)(A)(iii) and the instructions on the Means Test. Insofar as part (I) of that subsection corresponds to Line 42 and part (II) corresponds to Line 43, the Means Test form seems to impose restrictions not imposed by the statute. For example, Line 43 instructs debtors to list additional payments to creditors listed on Line 42, if such payments are required to maintain possession of the property. If only secured creditors to which payments are *contractually* due may be listed on Line 42, and the instructions for Line 43 refer to creditors listed on Line 42, Line 43 would seem to carry over the requirement that additional payments listed must be owed to creditors with contractually-due claims. However, § 707(b)(2)(A)(iii)(II) allows debtors to deduct "any payments to secured creditors" necessary to maintain possession of certain items; part (II) does not appear to qualify the term "secured creditors." This apparent conflict between the Means Test instructions might be remedied by listing all secured creditors on Line 42, but listing an "Average Monthly Payment" of $0 to the extent payments are not "contractually due" as that phrase is used in § 707(b)(2)(A)(iii)(I) and the instructions for Line 42. That reading would leave the additional question of whether payments on the tax lien may be listed on Line 43 of

---

**6.** The instructions for Line 43 states, "If any debts listed in Line 42 are secured by your primary residence ... you may include in your deduction 1/60[th] of any amount (the "cure amount") that you must pay the credi-tor in addition to the payments listed in Line 42, in order to maintain possession of the property. The cure amount would include any sums in default that must be paid in order to avoid repossession or foreclosure.... "

the Means Test, as "additional payments to [a] secured creditor[ ]" which would be necessary to maintain possession of the Property in a case under chapter 13. Accordingly, it is hereby

ORDERED that, within 21 days from the date of entry of this order, the United States Trustee may file a brief in support of the Motion. Debtors shall have 14 days to file a responsive brief within 14 days thereafter. The United States Trustee is permitted, but not required, to file a reply brief within 14 days after service of Debtors' response.

IT IS SO ORDERED this the 10th day of February, 2015.