**In re Nicole RIVERS, Debtor.**

**No. 3:11–bk–2440–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 12, 2012.

Keith D. Collier, Law Offices of Keith D. Collier, Jacksonville, FL, for Debtor.

**ORDER ON MOTION TO DISMISS PURSUANT TO 11 U.S.C. SECTION 707(b)(1) BASED ON PRESUMPTION OF ABUSE ARISING UNDER 11 U.S.C. SECTION 707(b)(2) AND ABUSE ARISING UNDER 11 U.S.C. SECTION 707(b)(3)**

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider the Motion of the United States Trustee (UST) to dismiss this Chapter 7 case.

On the date of the petition, the Debtor filed a statement indicating that she intended to surrender her former residence. The issue raised by the UST's Motion is whether the Debtor can deduct the resi-

dential mortgage payment from income on her Chapter 7 Means Test calculation.

The Court finds that the Debtor may deduct the payment on her Means Test. In Chapter 7 cases, the Means Test serves as a "screening mechanism to determine whether a Chapter 7 proceeding is appropriate." *Ransom v. FIA Card Services, N.A.,* —— U.S. ——, —— n. 1178, 131 S.Ct. 716, 722 n. 1, 178 L.Ed.2d 603 (2011). Since a determination of the appropriate proceeding should be made as of the petition date, a debtor's deductions from income on the Means Test should also be determined as of the petition date.

Additionally, the Means Test is only the first step of a two-tiered inquiry under § 707(b) of the Bankruptcy Code, and the two-tiered process also shows that a debtor's deductions on the Means Test should be determined as of the petition date. In Chapter 7 cases, the Means Test is an objective measure used only to determine whether the Court "shall presume" that the case is abusive, so that mechanical calculations as of the petition date are appropriate. If the presumption does not arise, the second step of the § 707(b) process permits the Court to consider whether the case is nevertheless abusive because of the totality of the circumstances, including the debtor's income and expenses after the filing of the petition.

In this case, the Court has considered the totality of the Debtor's circumstances, and finds that the granting of relief would not be an abuse of the provisions of Chapter 7.

### Background

The Debtor is married and has six dependent children. She is employed by a company known as Network Security Technologies, and earns more than $11,000.00 per month. Her non-debtor husband is not regularly employed.

The Debtor and her family previously lived in Stafford, Virginia. She owned a home in Virginia with a scheduled value of $289,300.00, and a scheduled mortgage in the amount of $462,120.00.

The Debtor moved from Virginia to Florida in August of 2010.

On April 4, 2011, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

The petition was accompanied by the Debtor's Statement of Intention, in which she indicated that the Virginia home was not claimed as exempt and would be surrendered.

On Amended Form 22A (the Means Test Calculation) filed shortly after the petition, the Debtor listed her gross income as $11,376.65 per month, and her husband's gross income as $462.89 per month, for total monthly income of $11,839.54. The amount of their annualized income exceeded the applicable median income for a family of eight in Florida, and the Debtor therefore completed Amended Form 22A by entering certain "deductions from income" in the total amount of $11,685.36. After subtracting the total deductions (and certain paycheck adjustments) from the total monthly income, the Debtor listed the amount of $102.73 on the Form as her "monthly disposable income."

The deductions from income entered on the Form include $2,778.00 as the mortgage payment to Wells Fargo Home Mortgage on the Virginia residence. The deductions also include $500.00 as one-sixtieth of the amount that would be required to cure the default on the home mortgage. (Doc. 11, Lines 42, 43).

On June 22, 2011, the UST filed a Motion to Dismiss the Debtor's case as an abuse of the provisions of Chapter 7. (Doc. 18).

## Discussion

In its Motion, the UST seeks dismissal of the Chapter 7 case pursuant to § 707(b)(1) of the Bankruptcy Code, based on the presumption of abuse under § 707(b)(2) of the Bankruptcy Code, and also based on the totality of the circumstances under § 707(b)(3) of the Bankruptcy Code.

Section 707(b)(1) provides that the Court may dismiss a Chapter 7 case if it finds that the granting of relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(1).

Section 707(b)(2) provides a method to determine whether a debtor's case is presumptively abusive for purposes of dismissal under § 707(b)(1). Generally, the section provides that the Court shall presume that abuse exists if the debtor's current monthly income, reduced by the expenses or payments determined under subsection (b)(2), is greater than certain threshold amounts set forth in the section. 11 U.S.C. § 707(b)(2) (the "Means Test").

If the presumption of abuse does not arise under § 707(b)(2), § 707(b)(3) provides that the Court may nevertheless determine whether the case is abusive based on the debtor's bad faith or the totality of the circumstances. 11 U.S.C. § 707(b)(3).

■ In other words, § 707(b) "provides a two-step process to detect and deter abusive filers: the ... objective means test prescribed in § 707(b)(2), and the more subjective test of § 707(b)(3) which requires an analysis of the facts of a particular case." *In re Henebury*, 361 B.R. 595, 603–04 (Bankr.S.D.Fla.2007) (quoted in *In re Parada*, 391 B.R. 492, 496 (Bankr. S.D.Fla.2008)).

### I. The presumption of abuse

In this case, the UST asserts that the case should be dismissed "under § 707(b)(1) based on the presumption of abuse that arises under § 707(b)(2)." According to the UST, the mortgage payment for the Virginia residence was not properly deducted from the Debtor's monthly income in her Means Test calculation, because the Debtor is surrendering the property. If the deduction is not allowed, the UST asserts that the Debtor's disposable income would equal the approximate sum of $2,594.58 per month, and the presumption of abuse would arise under § 707(b)(2) of the Bankruptcy Code.

The starting point for determining whether a case is presumptively abusive under § 707(b)(2) is the debtor's "current monthly income." The term "current monthly income" is defined in § 101(10A) of the Bankruptcy Code as the debtor's average monthly income during the 6–month period immediately preceding the filing of the bankruptcy case. 11 U.S.C. § 101(10A). Section 707(b)(2) then provides that the debtor's "current monthly income" is "reduced by the amounts determined under clauses (ii), (iii), and (iv)" of subsection (b)(2) to calculate whether the debtor's income exceeds the threshold levels set forth in the section.

The reduction taken by the Debtor in this case is found in clause (iii) of § 707(b)(2)(A). Clause (iii) provides a deduction for the debtor's "average monthly payments on account of secured debts," and provides that the average monthly payments *"shall be* calculated as ... the total of all *amounts* scheduled as *contractually due* to secured creditors in each month of the 60 months following the date of the filing of the petition." 11 U.S.C. § 707(b)(2)(A)(iii) (emphasis supplied).

The issue is whether the Debtor can deduct the mortgage payments for the Virginia residence from her income under § 707(b)(2), even though she is surrendering the property.

## A. Majority position before Supreme Court decisions

Prior to 2010, the "vast majority of courts to consider this issue have concluded that the plain language of the statute permits a Chapter 7 debtor to deduct payments on secured debt even when the debtor plans to surrender post-petition the collateral underlying the debt." *In re Perelman*, 419 B.R. 168, 173 (Bankr.E.D.N.Y. 2009) (Citations omitted).

Two representative cases that arose in the Eleventh Circuit are *In re Norwood–Hill*, 403 B.R. 905 (Bankr.M.D.Fla.2009) and *In re Ralston*, 400 B.R. 854 (Bankr. M.D.Fla.2009).

In *Norwood–Hill*, Judge Funk acknowledged that some courts have viewed the Means Test as a "snapshot" of the debtor's finances as of the petition date, and that other courts have viewed the Means Test as a "future oriented" approach that evaluates the debtor's finances in the months after the filing of the petition. In its decision, the Court noted that the cases which adopted the "snapshot" approach were mainly Chapter 7 cases, and the cases which adopted the "future oriented" approach were mainly Chapter 13 cases. According to the Court, the different approaches are attributed largely to the fact that Chapter 7 cases involve "separate and distinct" considerations from Chapter 13 cases. *In re Norwood–Hill*, 403 B.R. at 909–10.

Consistent with the prior decisions, the Court concluded that the "snapshot" view was the appropriate approach in the Chapter 7 case before it, and that the debtor was permitted to deduct the payment for surrendered property under the Means Test analysis of § 707(b)(2).

> [T]he Court finds that the "snapshot" approach best comports with the mechanisms of how Chapter 7's are intended to function under BAPCPA. This Court

agrees with the statement that "Congress chose to base the means test on historic income and expense figures that are in effect on the petition date, as opposed to figures that may change with the passage of time or with a change in the debtor's lifestyle."

*In re Norwood–Hill*, 403 B.R. at 910 (quoting *In re Benedetti*, 372 B.R. 90, 96 (Bankr.S.D.Fla.2007)) (quoting *In re Walker*, 2006 WL 1314125, at *5 (Bankr. N.D.Ga.)). In other words, based on the distinct considerations involved in Chapter 7 cases, the Court determined that "a debtor's financial condition for purposes of the Means Test should be evaluated on the petition date." *In re Norwood–Hill*, 403 B.R. at 911.

In *Ralston*, Judge Williamson determined that "in a Chapter 7 case, 'the means test calculations are intended to represent a 'snapshot' as of the petition date, examined without regard to a debtor's future intentions.'" *In re Ralston*, 400 B.R. at 864 (quoting *In re Smale*, 390 B.R. 111, 115 (Bankr.D.Del.2008)). In reaching this conclusion, the Court emphasized the mechanical character of the Means Test as applied in Chapter 7 cases.

> The amount of income is based on a historical formula, *see* § 101(10A), and the bulk of the allowable deductions are fixed amounts, based upon the IRS National Standards and Local Standards, not based on a debtor's actual expenses, *see* § 707(b)(2)(A)(ii)(I).
>
> As the function of the Means Test is to be a mechanical formula for establishing a presumptive bar to obtaining relief in a Chapter 7 case, it is fitting that the deductions should be bright line measurements. *See In re Thomas*, 395 B.R. at 919–20.

*In re Ralston*, 400 B.R. at 863–64. Because the debtor's mortgage payment is

"contractually due" on the petition date, the Court held that "in the context of determining whether a Chapter 7 filing is to be presumed abusive, the Means Test allows a debtor to claim the Secured Debt Deduction without regard to whether the collateral will be retained or surrendered." *Id.* at 860–63.

## B. The Supreme Court decisions

On June 7, 2010, the United States Supreme Court decided the case of *Hamilton v. Lanning*, — U.S. —, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). The decision arises under § 1325(b) of the Bankruptcy Code. If an objection to a Chapter 13 plan is filed, § 1325(b) requires a Chapter 13 debtor either to pay his unsecured creditors in full, or to submit all of his "projected disposable income" to the plan. 11 U.S.C. § 1325(b).

In *Lanning,* a debtor had received a one-time payment from her former employer within the six-month period before she filed her Chapter 13 petition. Consequently, the one-time payment was factored into the calculation of her "current monthly income" under § 101(10A), and affected the amount of her "projected disposable income" under § 1325(b) of the Bankruptcy Code.

The term "projected disposable income" is not defined in the Bankruptcy Code. Under § 1325(b), however, a debtor's "disposable income" is his current monthly income, less expenses that are "reasonably necessary to be expended" for maintenance and support. 11 U.S.C. § 1325(b)(2). The section implicates the Means Test under § 707(b) because § 1325(b)(3) provides that expenses "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)" if the Chapter 13 debtor's "current monthly income" exceeds the state median.

Since the debtor's current income in *Lanning* was skewed by the one-time prepetition payment, the issue for the Supreme Court was "how a bankruptcy court should calculate a debtor's 'projected disposable income'" under § 1325(b). *Hamilton v. Lanning,* 130 S.Ct. at 2469.

The Supreme Court concluded that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478. In reaching this conclusion, the Supreme Court "decline[d] to infer from § 1325's incorporation of § 707 that Congress intended to eliminate, *sub silentio,* the discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes." *Id.* at 2475.

Approximately seven months after *Lanning,* on January 11, 2011, the Supreme Court decided the case of *Ransom v. FIA Card Services, N.A.,* — U.S. —, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011). Whereas *Lanning* involved the income side of the "disposable income" equation, *Ransom* involved the expense side of the equation in a Chapter 13 case. As the Court explained:

> To determine how much income the debtor is capable of paying, Chapter 13 uses a statutory formula known as the "means test." §§ 707(b)(2)(2006 ed. and Supp. III), 1325(b)(3)(A)(2006 ed.). The means test instructs a debtor to deduct specified expenses from his current monthly income. The result is his "disposable income"—the amount he has available to reimburse creditors. § 1325(b)(2).

*Ransom v. FIA Card Services,* 131 S.Ct. at 721. The issue was "whether a debtor who does not make loan or lease payments

on his car may claim the deduction for vehicle-ownership costs." *Id.* at 723.

In evaluating the issue, the Court focused on the overall purpose of BAPCPA of "ensuring that debtors repay creditors to the extent they can." *Id.* at 727. "Congress adopted the means test—'[t]he heart of [BAPCPA's] consumer bankruptcy reforms,' . . . and the home of the statutory language at issue here—to help ensure that debtors who *can* pay creditors *do* pay them." *Id.* at 721 (Emphasis in original). "Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'" *Id.* at 725 (quoting H.R. Rep., at 2).

In order to advance the statute's core purpose, the Court found that a debtor's Means Test calculations should only include expenses that he actually incurs. "Because Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category. If a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute." *Id.* at 725.

In *Ransom*, therefore, the Court concluded that the debtor was not permitted to claim a car ownership cost as a deduction on his Means Test calculation, because he did not actually have a loan or lease expense. *Id.* at 730.

## C. Means Test after the Supreme Court decisions

Clearly, *Lanning* and *Ransom* both arise in the context of Chapter 13 cases, and both involve a determination of projected disposable income and the question of how much the debtors were required to submit to their Chapter 13 plans for payment to creditors.

The question that arises, therefore, is whether the Supreme Court decisions affect the application of the Means Test not only in Chapter 13 cases, but also in Chapter 7 cases.

In the Chapter 7 case of *In re Johnson,* 454 B.R. 882, 889 (Bankr.M.D.Fla.2011), the Bankruptcy Court discussed the impact of the two decisions:

> The common thread that can be derived from the Supreme Court's analysis in *Lanning* and *Ransom* is that the means test must be applied in light of the debtor's actual circumstances. It should be applied to give effect to its purpose—that is, that debtors who can afford to pay their creditors should pay their creditors.

In other words, the Means Test should be applied "consistent with the statutory text, to accurately reflect the debtor's particular circumstances." *In re Johnson,* 454 B.R. at 893–94.

As shown below, however, Courts have not been unanimous in determining whether the "common thread" of *Lanning* and *Ransom* applies equally in Chapter 13 and Chapter 7 cases.

At least two Bankruptcy Courts have relied on the Supreme Court decisions to disallow deductions in Chapter 7 cases where the debtors claimed expenses that they will not actually pay.

First, in *In re Wilson,* 454 B.R. 155 (Bankr.D.Colo.2011), the issue was whether a Chapter 7 debtor was entitled to claim a "mortgage/rent" expense as a deduction from income on his Means Test calculation, even though he lived with his girlfriend and did not pay any rent. The Bankruptcy Court found that *Ransom* "resolved" the issue.

> Although [ ] Ransom was a Chapter 13 case, this Court finds its holding

equally applicable in a Chapter 7 case. The Supreme Court's analysis was focused on the terms of § 707(b)(2)(A)(ii)(I) and the overall purpose of the Means Test, which is obviously applicable to Chapter 7 cases as well as being incorporated in § 1325. Although the *Ransom* Court found support for its interpretation from the context of § 1325(b)(3) and that section's definition of disposable income for purposes of a Chapter 13 plan, *see id.* at 724–25, the Court's holding was in no way limited to Chapter 13 cases.

*In re Wilson,* 454 B.R. at 157. According to the Bankruptcy Court, the decision in Ransom means that a debtor is only permitted to claim Means Test deductions for expenses that he actually incurs, based on the overriding purpose of the Means Test to ensure that debtors repay creditors the maximum amount that they can afford. Consequently, the Court disallowed the rent expense claimed, but not actually paid, by the Chapter 7 debtor. *Id.* at 157.

Second, in *In re Thompson,* 457 B.R. 872 (Bankr.M.D.Fla.2011), the issue was whether a Chapter 7 debtor was entitled to a deduction from income for a mortgage payment on a home that was vacated and surrendered. The Bankruptcy Court did not allow the deduction:

> "Because Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, *a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category.*" *Ransom v. FIA Card Servs.,* —— U.S. ——, 131 S.Ct. 716, 725, 178 L.Ed.2d 603 (2011) (emphasis added) (interpreting Section 707(b)(2)(A)(ii)(I)). The Means Test is intended to give the court guidance as to whether debtors have sufficient disposable income to pay their creditors. *Id.* Allowing debtors to

claim expenses they will not actually pay frustrates legislative intent and creates an inaccurate picture of their financial reality.

*In re Thompson,* 457 B.R. at 880. Since the mortgage payments in *Thompson* were not "actually-incurred expenses," they were not allowable deductions on the Chapter 7 debtor's Means Test calculation. *Id.* at 879–81.

Two other Bankruptcy Courts, on the other hand, have found that the Supreme Court decisions in *Lanning* and *Ransom* do not govern the issue of whether a Chapter 7 debtor may deduct a mortgage payment for surrendered property under § 707(b)(2). These cases cite the premise that the Chapter 13 Means Test (for the determination of projected disposable income) and the Chapter 7 Means Test (to determine if a presumption of abuse of the provisions of Chapter 7 arises) are based on distinctly different considerations.

In *In re Grinkmeyer,* 456 B.R. 385 (Bankr.S.D.Ind.2011), the Court concluded that a Chapter 7 debtor was permitted to deduct a mortgage payment on his Means Test, even though he intended to surrender the property. Although the Court referred to *Lanning* and *Ransom* as a "glimmer of light in the darkness," it declined to apply the "forward-looking" or "actual expense" approach in the Chapter 7 case before it. According to the Court, the Chapter 7 Means Test is designed as a screening device to determine whether Chapter 7 relief is appropriate for a particular debtor, and the "snapshot approach" best fits within this statutory design. *In re Grinkmeyer,* 456 B.R. at 387–88 (citing *In re Rudler,* 576 F.3d 37 (1st Cir.2009)).

Similarly, in *In re Sonntag,* 2011 WL 3902999 (Bankr.N.D.W.Va.), the Court rejected the "forward-looking" approach in a Chapter 7 case. The Court viewed the approach as appropriate in Chapter 13

cases for purposes of determining a debtor's "projected disposable income" under § 1325(b), but found that future events are not appropriately considered in Chapter 7 cases. Since the only inquiry under § 707(b) is whether a payment is contractually due at the time that the bankruptcy petition is filed, the Court held that Chapter 7 debtors were permitted to claim a Means Test deduction for a mortgage payment on property that they intended to surrender. *In re Sonntag,* 2011 WL 3902999, at *3–4.

### D. Application

In this case, the Debtor filed a statement with her petition indicating that she intended to surrender her former residence. The issue raised by the UST's Motion to dismiss the case is whether the Debtor can deduct the residential mortgage payment from income on her Chapter 7 Means Test calculation. The Court finds that the Supreme Court decisions in *Lanning* and *Ransom* do not affect the deductions that a Chapter 7 debtor may claim under § 707(b)(2) of the Bankruptcy Code, and that the Debtor in this case may deduct the mortgage payment on her Means Test form.

#### 1. "A screening mechanism to determine whether a Chapter 7 proceeding is appropriate"

The Supreme Court recognized that the purpose of the Means Test in Chapter 13 cases differs significantly from its purpose in Chapter 7 cases. In Chapter 13 cases, the Means Test is the calculation by which above-median debtors deduct the expenses specified in § 707(b)(2) from their current monthly income in order to determine "amounts reasonably necessary to be expended" for the purpose of determining their "disposable income." The goal is to determine whether the debtor is submitting all of his "projected disposable income" to his Chapter 13 plan. See *Lanning,* 130 S.Ct. at 2470, 2475. "In Chapter 13 proceedings, the means test provides a formula to calculate a debtor's disposable income, which the debtor must devote to reimbursing creditors under a court-approved plan generally lasting from three to five years." *Ransom,* 131 S.Ct. at 721.

■ The purpose of the Means Test in Chapter 7 cases, on the other hand, is to determine whether the granting of relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b). This purpose of the Chapter 7 Means Test is highlighted in footnote 1 of *Ransom:*

> *Chapter 13 borrows the means test from Chapter 7, where it is used as a screening mechanism to determine whether a Chapter 7 proceeding is appropriate. Individuals who file for bankruptcy relief under Chapter 7 liquidate their nonexempt assets, rather than dedicate their future income, to repay creditors.* See 11 U.S.C. §§ 704(a)(1), 726. *If the debtor's Chapter 7 petition discloses that his disposable income as calculated by the means test exceeds a certain threshold, the petition is presumptively abusive.* § 707(b)(2)(A)(i).

*Ransom,* 131 S.Ct. at 722 n. 1 (Emphasis supplied). In this passage, the Supreme Court recognizes that the Means Test functions in Chapter 7 cases "as a screening mechanism" to determine whether it is appropriate to permit a debtor to proceed in a liquidating case.

■ The determination should be made as of the petition date.

It is a fundamental principle of bankruptcy law that the petition date is a key date for the determination of both debtors' and creditors' rights. Under § 301 of the Bankruptcy Code, the filing of a voluntary petition "constitutes an order for relief" under the chapter designated in the petition. 11 U.S.C. § 301.

The date on which the bankruptcy petition is filed and the order for relief is entered is the watershed date of a bankruptcy proceeding. As of this date, creditors' rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor's exemptions is determined.

*In re Johnson,* 165 B.R. 524, 528 (S.D.Ga. 1994) (quoted in *In re Dean,* 319 B.R. 474, 478 (Bankr.E.D.Va.2004)). A "general tenet" of bankruptcy law is that "circumstances are to be gauged from the petition date, with the Bankruptcy Code replete with examples where any deviation therefrom is made explicit." *In re Haar,* 373 B.R. 493, 501 (Bankr.N.D.Ohio 2007).

Section 109 of the Bankruptcy Code, for example, is entitled "who may be a debtor," and sets forth the eligibility requirements for the operating chapters of the Bankruptcy Code. Section 109(a) provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a).

A debtor's eligibility for bankruptcy relief under section 109 is determined by facts as they exist at the time the bankruptcy petition filed, and is not altered by the occurrence of ordinary postpetition events. *See In re Moore,* 359 B.R. 665, 671 (Bankr.E.D.Tenn.2006) ("Eligibility is determined as of the filing of the petition."); *In re Global Ocean Carriers Ltd.,* 251 B.R. 31, 37 (Bankr.D.Del.2000) ("The test for eligibility is as of the date the bankruptcy petition is filed.")

*In re Myers,* 2007 WL 2428694, at *3 (Bankr.E.D.Pa.). See also *In re Grew,* 278 B.R. 619, 622 (Bankr.M.D.Fla.2002) ("It is well established that the controlling time which governs eligibility is when the Petition is filed and not what may have happened after the filing.").

■ The determination of whether to permit a Chapter 7 debtor to proceed in a liquidating case should be made as of the petition date. Since the eligibility determination is made as of the petition date, and since the Chapter 7 Means Test is a "screening mechanism to determine whether a Chapter 7 proceeding is appropriate," the Court finds that the Chapter 7 Means Test should be applied as of the petition date. Accordingly, a Chapter 7 debtor's deductions from income on his Means Test calculation should also be determined as of the petition date, and a Chapter 7 debtor may deduct a mortgage payment from income even if he intends to surrender the underlying property.

### 2. A two-tiered process

The Chapter 7 Means Test is only the first step of a two-tiered inquiry under § 707(b) of the Bankruptcy Code, and the two-tiered process also shows that a debtor's Means Test deductions should be determined as of the petition date.

The structure of § 707(b) was summarized in *In re Bacardi,* 2010 WL 54760 (Bankr.N.D.Ill.).

Section 707(b)(1) of the Bankruptcy Code permits the dismissal of a chapter 7 debtor's case if granting the relief "would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Under section 707(b)(2), the court must "presume abuse" if a debtor fails the means test. Under section 707(b)(3), a court may dismiss the case of a debtor who passes the means test, or who manages to rebut the presumption of abuse under section 707(b)(2), if the debtor filed the petition in bad faith or if "the totality of the circumstances of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A),(B).

*In re Bacardi*, 2010 WL 54760, at *2. In other words, § 707(b) "provides a two-step process to detect and deter abusive filers: the ... objective means test prescribed in § 707(b)(2), and the more subjective test of § 707(b)(3) which requires an analysis of the facts of a particular case." *In re Henebury*, 361 B.R. at 603–04.

The first step of the process, the "objective means test prescribed in § 707(b)(2)," is the part of the inquiry that functions as a "screening mechanism to determine whether a Chapter 7 proceeding is appropriate." *Ransom*, 131 S.Ct. at 722 n. 1. Consistent with this function, it is widely recognized that the Means Test provides a nondiscretionary formula for determining whether the Court should presume that the case is an abuse of the provisions of Chapter 7. *In re Siler*, 426 B.R. 167 (Bankr.W.D.N.C.2010); *In re Henebury*, 361 B.R. 595 (Bankr.S.D.Fla. 2007).

> The Court agrees with those authorities holding that the Means Test is only the first step in determining whether a debtor's petition is abusive. The Means Test functions as an initial screen to weed out those Chapter 7 petitions that are most clearly abusive. As one court explains, "Congress intended that there be an easily applied formula for determining when the Court should *presume* that a debtor is abusing the system by filing a chapter 7 petition." *In re Fowler*, 349 B.R. 414, 420–21 (Bankr.D.Del.2006).

*In re Jensen*, 407 B.R. 378, 384 (Bankr. C.D.Cal.2009) (Emphasis in original). "The means test is a statutory formula that operates as a screening mechanism to decide when a presumption of abuse arises in a bankruptcy case." *In re Arnoux*, 442 B.R. 769, 771 (Bankr.E.D.Wash.2010).

Given the formulaic approach of the screening mechanism, it appears that the Means Test should be applied as of the date that the Chapter 7 petition is filed, without consideration of whether the debtor's expenses may change after that date.

> In short, the "means test" calculation of § 707(b)(2) is based on a "snapshot" of a debtor's financial situation as of the petition date. Thus, postpetition changes to a debtor's income and expenses, as well as a debtor's future intentions, while possibly relevant to a determination of abuse under § 707(b)(3), are not taken into consideration when determining whether the granting of relief should be deemed to be presumptively abusive for purposes of § 707(b)(2).

*In re Polinghorn*, 436 B.R. 484, 488 (Bankr.N.D.Ohio 2010). For the limited purpose of determining whether the presumption arises under § 707(b)(2), a "snapshot" of the debtor's finances as of the petition date is the appropriate approach. *In re Rudler*, 388 B.R. 433, 438 (1st Cir. BAP 2008). The Means Test of § 707(b)(2) is a mechanical test, designed to present a snapshot of the debtor's financial situation as of the petition date. *In re Haar*, 360 B.R. 759 (Bankr.N.D.Ohio 2007).

Under § 707(b)(2), therefore, the Means Test should be mechanically applied as of the petition date to determine if the Court "shall presume abuse exists." 11 U.S.C. § 707(b)(2). If the presumption does not arise or is rebutted, the Court may nevertheless consider whether the case is abusive under the second tier of the two-part inquiry. Under § 707(b)(3), the Court may dismiss a case if the "totality of the circumstances" shows that it is abusive.

Section 707(b)(3) indicates that the "totality of the circumstances" should relate to the debtor's financial situation, but does not otherwise tell Bankruptcy Courts how to make the evaluation. In contrast to the mechanical formula provided by the

Means Test, the § 707(b)(3) analysis is a broad, flexible review that encompasses any factors that are relevant to the debtor's financial condition. *In re Riley*, 2010 WL 3718017 (Bankr.D.Mass.); *In re Jensen*, 407 B.R. 378, 384 (Bankr.C.D.Cal. 2009).

■ In both pre-BAPCPA cases and post-BAPCPA cases, the term has been interpreted to include post-petition events that affect a debtor's finances. *In re Parada*, 391 B.R. 492, 500–01 (Bankr.S.D.Fla. 2008). The "overwhelming weight of authority" on the issue holds that it is proper to consider post-petition events in evaluating the totality of the circumstances under § 707(b)(3) of the Bankruptcy Code. *In re Penninger*, 2011 WL 2709321, at *2 (Bankr.M.D.N.C.).

Under § 707(b), therefore, the Court first determines whether the presumption of abuse arises pursuant to the Means Test of § 707(b)(2). If the presumption does not arise, the Court may evaluate the debtor's future financial situation to determine whether the case is nevertheless abusive. This structure supports the conclusion that the first step—the Means Test—should be applied as of the petition date. As Judge Funk stated in *Norwood–Hill*:

> In instances where a court finds that the presumption does not arise, the case may still be converted or dismissed under § 707(b)(3). Thus, the Court does not find that the "snapshot" approach goes against Congress' intent to ensure that debtors who have the resources to pay their creditors do so. As a bankruptcy court in Texas reasoned, "[t]o allow a movant to include the outcome of future events as part of the means test would eliminate the distinction between the presumption of abuse test and the totality of the circumstances test." *In re Singletary*, 354 B.R. 455, 465 (Bankr. S.D.Tex.2006); … It appears to this

Court, that the means test and the totality of the circumstances test were designed to be separate and distinct from one another. The means test is meant to be applied as a strict mathematical formula, while the totality of the circumstances test is a fluid test that takes into account a variety of different factors.

*In re Norwood–Hill*, 403 B.R. at 911. *See also In re Haman*, 366 B.R. 307, 316–18 (Bankr.D.Del.2007) (Calculations under the Means Test are purposefully circumscribed and should not include future or foreseeable circumstances. Instead, such future circumstances are properly considered under the totality analysis of § 707(b)(3)).

In summary, the Means Test is only the first step of a two-tiered inquiry under § 707(b) of the Bankruptcy Code, and the two-tiered process shows that a debtor's deductions on the Means Test should be determined as of the petition date. In Chapter 7 cases, the Means Test is an objective measure used only to determine whether the Court "shall presume" that the case is abusive, so that mechanical calculations as of the petition date are appropriate. If the presumption does not arise, the second step of the § 707(b) process permits the Court to consider whether the case is nevertheless abusive based on the totality of the circumstances, including the debtor's income and expenses after the filing of the petition.

Based on the mechanical application of § 707(b)(2) as of the petition date, the Debtor in this case may deduct her mortgage payment from income on her Chapter 7 Means Test, even if she intends to surrender the underlying property.

## II. The totality of the circumstances

In this case, the UST acknowledges that "the presumption of abuse arising here

hinges entirely on the validity of the Debtor's claimed mortgage deductions on the Virginia Property." (Doc. 36, p. 3). Since the deduction should be determined as of the petition date, the Debtor's deduction for her former residence should be allowed, and the presumption of abuse does not arise.

As shown above, however, in cases where the presumption does not arise or is rebutted, § 707(b)(3) provides that the Court shall consider the "totality of the circumstances ... of the debtor's financial situation" to determine whether the granting of relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(3).

■ It is generally accepted that a debtor's ability to repay his creditors is the primary factor to consider under the "totality of the circumstances" analysis of § 707(b)(3). It is also accepted that the debtor's ability to pay is not the conclusive factor, and that other factors must be taken into account to the extent that they are helpful in determining whether the case is abusive. *In re Lavin,* 424 B.R. 558, 563 (Bankr.M.D.Fla.2010); *In re Norwood–Hill,* 403 B.R. at 912.

■ The Court has considered the totality of the Debtor's circumstances in this case, and finds that the granting of relief would not be an abuse of the provisions of Chapter 7.

The Debtor in this case earns a substantial income. On her Amended Form 22A, she listed gross income in the amount of $11,376.65 per month, and joint annualized income with her husband in the amount of $142,074.48. (Doc. 11).

Despite the Debtor's income, however, her total circumstances do not indicate that this case is an abuse of the provisions of Chapter 7. Specifically, the Debtor's

family situation and conduct show that Chapter 7 relief is appropriate in this case.

The Debtor has six dependent children. At the time that the petition was filed, two of the children were eight years old, and three of the children were teenagers. The Debtor's husband does not have stable employment, and the Debtor is the primary source of financial support for the children.

At trial, the Debtor testified that she had surgery in September of 2010 for endometriosis and other medical conditions, and that she was scheduled for additional surgery the week following the trial. (Transcript, pp. 14–15). She also testified that two of her children have severe allergies that require restricted diets and medication, and that one child suffers from a severe form of eczema that also requires a special diet and medication. (Transcript, p. 22). The Debtor's Schedule F reflects a number of medical bills among her unsecured debts. The general unsecured debts scheduled by the Debtor total $18,760.00.

Additionally, the events that precipitated the bankruptcy filing do not evidence any improper purpose or conduct. Rather, the Debtor's marital and family difficulties were primary factors that led to the Chapter 7 petition. The Debtor testified that she and her husband were anticipating a divorce in 2010, and those difficulties led to her family's relocation from Virginia to Florida. (Transcript, pp. 18–19).

Finally, the UST does not assert that the Debtor has acted in bad faith (Doc. 18, ¶ 30), and the record does not indicate that the Debtor engaged in any unusual financial transactions or incurred any extraordinary debts in the period leading up to the bankruptcy petition. Although the UST contends that certain of the Debtor's expenses are excessive and that the Debtor should "tighten her belt," it does not appear that either the Debtor or her family enjoys an extravagant lifestyle. The Debt-

or rents a home for the family for $1,800.00 per month, and the two vehicles listed on the Debtor's schedules are a 1997 Hyundai and a 2002 Chevrolet. The Debtor drives the Chevrolet, which is in need of repair, and makes a vehicle payment for the Chevrolet in the amount of $467.00 per month. (Transcript, p. 17; Doc. 33, ¶ 27).

Based on the record and the totality of the circumstances, the Court finds that granting relief in this case would not be an abuse of the provisions of Chapter 7.

### Conclusion

The UST filed a Motion to dismiss this case pursuant to § 707(b) of the Bankruptcy Code. The Motion should be denied.

First, the Court finds that the Debtor may deduct her contractually due residential mortgage payment from income on her Chapter 7 Means Test calculation, even though she intends to surrender the former residence. Consequently, the presumption of abuse does not arise in this case under § 707(b)(2) of the Bankruptcy Code.

Additionally, the Court has considered the totality of the circumstances under § 707(b)(3) of the Bankruptcy Code, and finds that granting relief in this case would not be an abuse of the provisions of Chapter 7.

Accordingly:

**IT IS ORDERED** that the United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. Section 707(b)(1) Based on Presumption of Abuse Arising Under 11 U.S.C. Section 707(b)(2) and Abuse Arising Under 11 U.S.C. Section 707(b)(3) is denied.