**IN RE: Andrea Cay POWERS, Debtor.**

**CASE NO.: 14–40433–KKS**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

Signed May 1, 2015

William H. Crawford, Thompson, Crawford & Smiley, P.A., Tallahassee, FL, for Debtor.

*AMENDED ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. SECTION 707(b)(1) BASED ON PRESUMPTION OF ABUSE ARISING UNDER 11 U.S.C. SECTION 707(b)(2) AND ABUSE ARISING UNDER 11 U.S.C. SECTION 707(b)(3) (DOC. 26), AND DISMISSING CASE UNLESS DEBTOR MOVES TO CONVERT TO CHAPTER 13 WITHIN FOURTEEN (14) DAYS* [1]

KAREN K. SPECIE, United States Bankruptcy Judge

THIS CASE is before the Court on the *United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. Section 707(b)(1) Based on Presumption of Abuse Arising Under 11 U.S.C. Section 707(b)(2) and Abuse Arising Under 11 U.S.C. Section 707(b)(3)* (the "Motion" or the "Motion to Dismiss," Doc. 26). The Debtor, Andrea Cay Powers, filed a response to the Motion to Dismiss on October 15, 2014 (Doc. 32). Both parties submitted memoranda of law after a hearing on the Motion (Docs. 43 and 45).

The Motion seeks dismissal of this Chapter 7 case on two separate bases, § 707(b)(2) and § 707(b)(3). To facilitate determination of this matter, the Court bifurcated the Motion and advised the parties that it would first consider dismissal pursuant to § 707(b)(2), and then consider dismissal pursuant to § 707(b)(3) only if necessary.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A).

After thoroughly reviewing the pleadings and pertinent case law, and having

---

**1.** This Amended Order corrects a typographical error at the top of page 3, where the sum of $92,000 is now correctly reflected as $192,000.

considered argument of competent bankruptcy counsel, the Court finds that the Motion to Dismiss should be granted on the basis that the Debtor's Chapter 7 petition is presumptively abusive under 11 U.S.C. § 707(b)(2).

## FACTUAL HISTORY

The material facts are not in dispute. The Debtor filed her Chapter 7 petition on July 31, 2014. She is a divorced mother of four whose gross monthly income is $19,733.[2] The Debtor and her children are currently living in a rental home, having moved out of their former homestead pre-petition.[3] The Debtor's total unsecured debt will exceed $480,000, if the estimated deficiency on her former homestead is included.[4]

The Debtor claimed a deduction of $4,359 per month for mortgage payments on her former homestead[5] that she has not made since before July of 2013.[6] The Debtor also claims a housing adjustment deduction to account for the rent she currently pays.[7] The Debtor represented that she intends to surrender her former homestead.[8] Under the "means test" calculation,[9] once she reduced her child education expense deduction to $312.50, the Debtor's net disposable income as of the petition date became a negative $1,147.60, inclusive of the mortgage payments on the former homestead. If the Debtor's deduction for the mortgage payments on the former homestead is allowed, the Debtor "passes" the means test and qualifies for Chapter 7; if the Debtor's deduction for the mortgage payments on the former homestead is disallowed, she will have net disposable income of $3,211.40 per month, which over 60 months will total over $192,000.[10] This would enable the Debtor to pay about 39–40% of her scheduled unsecured debt; more if all unsecured creditors do not file claims.

## LEGAL ISSUES

The Debtor's high income makes her an "above median" debtor under BAPCPA.[11] That status, in turn, permits her to claim certain deductions in order to arrive at her adjusted monthly income for purposes of qualifying for Chapter 7 or Chapter 13 relief.[12] The United States Trustee originally challenged three deductions taken by the Debtor: (1) $2,100 per month for child

2. Doc. 18, at 2. The applicable median family income for a household of four—the Debtor plus her three dependents—in Florida is $63,196. U.S. Dep't of Justice, Census Bureau Median Family Income by Family Size, http://www.justice.gov/ust/eo/bapcpa/2014 0501/bci_data/median_income_table.htm (last visited Apr. 23, 2015).

3. Doc. 32, at 3.

4. On Schedule D, the Debtor lists the unsecured portion of her secured debts will total $260,447. Schedule E lists $2,900 in unsecured claims, and Schedule F lists $222,874.21 in unsecured non-priority claims. Doc. 13, at 8–23. These amounts total $486,221.21.

5. Doc. 18, at 6.

6. Doc. 11, at 3. The Debtor did not contest the mortgage holder's motion for relief from stay, which was granted by order dated September 10, 2014. Doc. 20.

7. Doc. 18, at 4.

8. Doc. 13, at 40. The Debtor also claimed a child education expense deduction in the amount of $2,100.00, which she reduced to $312.50 in response to the UST's objection. Doc. 32, at 1.

9. 11 U.S.C. § 707(b)(2)(A)(i) (2014).

10. This assumes that all of the Debtor's other claimed deductions remain the same.

11. 11 U.S.C. § 707(b)(7); Doc. 18, at 3.

12. 11 U.S.C. § 707(b)(2)(A)(ii)-(iv).

education expenses; (2) the monthly mortgage payment of $4,359 on the former homestead; and (3) $467 per month in excess of the allowable deduction for actual rent and a security system.[13]

The issues before the Court are: (1) whether the Debtor should be allowed to claim the deduction for the $4,359 mortgage payment that she is not paying, and was not paying on the petition date for property she has effectively abandoned, that is in foreclosure, and that she intends to surrender; and (2) whether this case is subject to dismissal based on a presumption of abuse arising under Section 707(b)(1).

## APPLICABLE LAW

Under § 707(b)(1), the court may dismiss a case filed by an individual whose debts are primarily consumer debts if the court finds that case would be an abuse of the provisions of Chapter 7.[14] The court "shall" presume abuse if the debtor's current monthly income, reduced by the amounts specified in § 707(b)(2)(A)(ii)-(iv), and multiplied by 60, is "not less than the lesser of:"

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or

(II) $12,475.[15]

Under 11 U.S.C. § 707(b)(2)(A)(ii), a debtor may deduct certain expenses from her current monthly income. As to one of the permitted expense deductions, Subsection 707(b)(2)(A)(iii) provides:

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors · in each month of the 60 months following the date of the filing of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; . . . .

Two decisions by the Supreme Court in Chapter 13 cases lead this Court to conclude that the Debtor should not be permitted to deduct phantom secured debt payments in this Chapter 7 case. *Hamilton v. Lanning*[16] and *Ransom v. FIA Services, N.A.,*[17] dealt with income and expenses, respectively, under § 1325(b) of the Bankruptcy Code, which incorporates § 707 by reference.

In *Lanning*, the debtor received a one-time buyout from a former employer within 180 days before she filed her Chapter 13 petition.[18] Because this buyout would have increased the debtor's current monthly income, as calculated under the "means test," the debtor did not include it in her income calculations nor did she use it with which to calculate her plan payments. Rather, she based her $144 plan payments only on the income from her new job.[19]

---

**13.** Doc. 18, at 4–6; Doc. 26.

**14.** 11 U.S.C. § 707(b)(1) (2014).

**15.** *Id.* § 707(b)(2)(A)(i).

**16.** *Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).

**17.** *Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011).

**18.** *Lanning*, 560 U.S. at 511, 130 S.Ct. 2464.

**19.** *Id.* Had the debtor included the one-time buyout in her income calculation, her plan payments would have been $756 per month. *Id.* at 512, 130 S.Ct. 2464.

The Chapter 13 trustee objected, arguing that the means test calculation of the debtor's "projected disposable income"[20] should include the one-time buyout, and so her plan payments were too low.[21] The bankruptcy court disagreed, and overruled the Trustee's objection.[22] The Tenth Circuit B.A.P. and the Tenth Circuit both affirmed, finding that bankruptcy courts may look beyond the bankruptcy schedules and forms to the debtor's actual circumstances to determine the debtor's "projected disposable income."[23] The Supreme Court also affirmed, holding that a Chapter 13 debtor's projected disposable income calculation can account for changes in income or expenses that are known or virtually certain at the time of confirmation.[24] In reaching this conclusion, the Court criticized use of a "mechanical" approach to the determination of a debtor's projected disposable income, noting that a calculation that relies solely on the formulae provided in § 707 could "deny creditors payments that the debtor could easily make."[25]

In *Ransom*, the Supreme Court again interpreted the phrase "projected disposable income" contained in § 1325(b)(1)(B), this time in relation to expense deductions rather than income.[26] Holding that a debtor that was not making loan or lease payments on a car could not take the car ownership deduction as an expense under the means test, the Court stated:

> Because Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category. . . .
>
> . . . Congress designed the means test to measure debtors' disposable income and, in that way, "to ensure that [they] repay creditors the maximum they can afford." This purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment.[27]

Before and after *Lanning* and *Ransom*, bankruptcy courts have disagreed about proper application of § 707(b)(2)(A)(iii); specifically, as to whether a Chapter 7 debtor may deduct secured loan payments he or she is not making, on collateral to be surrendered. At last count, since *Lanning* and *Ransom* eight bankruptcy courts have allowed such deductions,[28] and six courts have not, but for different reasons.[29] The

---

**20.** 11 U.S.C. § 1325(b).

**21.** *Lanning*, 560 U.S. at 511–12, 130 S.Ct. 2464.

**22.** *Id.* at 512, 130 S.Ct. 2464.

**23.** *Id.* at 512–13, 130 S.Ct. 2464.

**24.** *Id.* at 524, 130 S.Ct. 2464.

**25.** *Id.* at 517–20, 130 S.Ct. 2464.

**26.** *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011).

**27.** *Id.* at 70–71, 131 S.Ct. 716 (citations omitted) (quoting H.R.Rep. No. 109–31(I), at 2 (2005).

**28.** *U.S. Trustee v. Navin (In re Navin)*, 526 B.R. 81 (Bankr.N.D.Ga.2015); *In re Johnson*, 503 B.R. 447 (Bankr.N.D.Ind.2013); *Walton v. Hardigan (In re Hardigan)*, No. 12–40484, 2012 WL 9703097 (Bankr.S.D.Ga. Dec. 20, 2012); *In re Rivers*, 466 B.R. 558 (Bankr. M.D.Fla.2012); *In re Behague*, 497 B.R. 340 (Bankr.M.D.Fla.2012); *In re Sonntag*, No. 10–1749, 2011 WL 3902999 (Bankr.N.D.W.Va. Sept. 6, 2011); *In re Grinkmeyer*, 456 B.R. 385 (Bankr.S.D.Ind.2011); *In re Ng*, No. 10–02001, 2011 WL 576067 (Bankr.D.Haw. Feb. 9, 2011).

**29.** *In re White*, 512 B.R. 822 (Bankr. N.D.Miss.2014); *In re Hamilton*, 513 B.R. 292 (Bankr.M.D.N.C.2014); *In re Krawczyk*, No. 11–09596–8–JRL, 2012 WL 3069437 (Bankr.E.D.N.C. July 27, 2012); *In re Fredman*, 471 B.R. 540 (Bankr.S.D.Ill.2012); *In re*

courts that have denied Chapter 7 debtors the right to deduct payments on secured debts they are not actually making—so called "phantom payments"—have examined, as did the Supreme Court in *Lanning* and *Ransom*, the debtor's "actual circumstances." [30] Some courts have adopted the "forward-looking" approach, focusing on the debtor's post-petition intentions and obligations, while others use a "snapshot" approach, focusing instead on the debtor's financial and legal obligations as of the date of the bankruptcy petition.

The bankruptcy court in *In re White* adopted the "forward-looking approach" and denied the above-median debtor's $18,864.67 deduction for monthly payments on secured claims that he did not intend to pay and was not paying on the date of his petition.[31] The court held that the § 707(b)(2)(A)(iii) deduction could only be claimed if the payments to secured creditors were to "actually be made." [32] The court disagreed with the "snapshot approach" because it found that courts that have adopted this approach generally apply the mathematical calculations in the means test in a vacuum, as opposed to courts that have adopted the forward-look-ing approach, which the court in *White* described as reality-based.[33] The *White* court reasoned, logically, that "if a debtor cannot claim a standard deduction for an expense he does not have" under *Ransom*, then a debtor should not be permitted to claim such a deduction in Chapter 7; [34] suggesting further that permitting the deduction of "phantom payments" on the means test has the potential of turning a debtor's "fresh start" into a "free pass." [35]

Ruling similarly, the bankruptcy court in *In re Fredman*, stated "[a] fictitious expense should not be allowed either during the life of a chapter 13 debtor's plan or in determining the suitability of a debtor's chapter 7 case." [36] That court noted that a mechanical interpretation of 707(b)(2)(A)(iii) is consistent with Congress's intent to limit bankruptcy court discretion. Looking forward, the court reasoned that a realistic approach that accounts for the debtor's intention to surrender property is consistent with the policy that debtors who can afford to repay creditors do so.[37] The court highlighted the reasoning of *Ransom*: "Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure

---

*Sterrenberg,* 471 B.R. 131 (Bankr.E.D.N.C. 2012); *In re Thompson,* 457 B.R. 872 (Bankr. M.D.Fla.2011).

**30.** *See, e.g., In re White,* 512 B.R. at 823; *In re Fredman,* 471 B.R. at 554 (describing payments that the debtors stopped making prior to bankruptcy and did not intend to resume making as "phantom payments"); *In re Thompson,* 457 B.R. at 872.

**31.** *In re White,* 512 B.R. at 824–25.

**32.** *Id.* at 823.

**33.** *Id.* at 827, 829 (Under the "snapshot approach," "bankruptcy courts are constrained to apply the mathematical calculations called for in [the means test] in a vacuum, and allow deduction of the secured payments, without regard to whether the debtor will actually make the payments.").

**34.** *Id.* at 830.

**35.** *Id.* (internal quotation marks omitted) (citing *Clark v. Rameker,* —— U.S. ——, 134 S.Ct. 2242, 2248, 189 L.Ed.2d 157 (2014)).

**36.** *In re Fredman,* 471 B.R. 540, 549 (Bankr. S.D.Ill.2012). Focusing on the phrase "scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition," the *Fredman* court also determined that § 707(b)(2)(A)(iii) is ambiguous. *Id.* at 543, 550.

**37.** *Id.* at 546.

that [they] repay creditors the maximum they can afford.' " [38]

Faced with similar facts, the court in *In re Hardigan* reached the opposite conclusion.[39] In *Hardigan*, the debtor was not making and would not make payments on debts secured by his residence.[40] These fictional payments amounted to more than $58,000 and, when included in the means test, reduced the debtor's adjusted disposable income to negative $30,125.40 per month.[41] The court in *Hardigan* distinguished *Lanning* and *Ransom* on the basis that they deal with Chapter 13, and reaffirmed its holding in a previous case that such deductions were permissible.[42] Going directly to the wording of the formula set forth in § 707(b)(2)(A)(iii)(I) and (II), and bypassing the language that specifies "the debtor's" payments, the court held that because the payments were "scheduled as contractually due" [43] and the secured creditor constituted a "holder of a claim coupled with any lien," [44] the deductions for "payments on account of secured debts" were

allowable despite the fact that the debtor was not actually making the payments.[45]

In cases that post-date *Ransom* and *Lanning*, three judges within the same district in Florida have reached different conclusions on this issue; one denied the debtors a deduction for phantom payments while two others permitted the deduction.[46] In *In re Thompson*, the court denied the deduction, recognizing that allowing debtors to claim deductions for payments they will not actually make will frustrate legislative intent and paint "an inaccurate picture of their financial reality." [47] In *Thompson* the above-median Chapter 7 debtors ceased making their $3,054 mortgage payments on their homestead in 2010 and filed bankruptcy in 2011, stating their intent to surrender the property.[48] The judges in *In re Rivers* and *In re Behague* declined to follow *In re Thompson*.[49] In the view of the *Behague* court, § 707(b)(2)(A)(iii) does not limit the deduction to "actual" expenses, but rather permits a debtor to deduct "payments on account of secured debts" as long as they are

---

38. *Id.* at 553 (quoting *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 71, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011)) (allowing debtors to deduct "phantom monthly mortgage payments" could lead to the "absurd result" that debtors who took out larger mortgages—and are no longer paying on those mortgages— would receive a larger deduction on the means test and have an easier time qualifying for Chapter 7.) *Id.* at 553–54.

39. *Walton v. Hardigan (In re Hardigan)*, No. 12–40484, 2012 WL 9703097, at *4 (Bankr. S.D.Ga. Dec. 20, 2012).

40. *Id.* at *2.

41. *Id.* at *1.

42. *Id.* at *3–4 (citing *In re James*, 414 B.R. 901 (Bankr.S.D.Ga.2008)).

43. *Id.* at *4.

44. *Id.*

45. *Id.*

46. *In re Rivers*, 466 B.R. 558 (Bankr.M.D.Fla. 2012); *In re Behague*, 497 B.R. 340 (Bankr. M.D.Fla.2012); *In re Thompson*, 457 B.R. 872 (Bankr.M.D.Fla.2011).

47. *In re Thompson*, 457 B.R. at 880–81 (" '[A] debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category.' " (quoting *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 70–71, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011))).

48. *Id.* at 875–76. In denying this deduction the court pointed out, correctly, that whether debtors are actually making the mortgage payments is a question of fact, and the undisputed fact was that they were making no such payment. *Id.* at 881.

49. *In re Rivers*, 466 B.R. at 565–67; *In re Behague*, 497 B.R. at 342–43.

"contractually due." [50] Recognizing that its conclusion led to a less accurate picture of the debtor's financial situation, and acknowledging that "[t]he 2005 amendments [to the Code] were structured to ensure that debtors repay the maximum that they can afford," the court nonetheless allowed the deduction for the phantom payments. [51] In *In re Rivers*, the court allowed the above-median Chapter 7 debtor to take a deduction for a $2,778 mortgage payments she was not making on property she intended to surrender. [52] Although stating that it was adopting the "snapshot" view, the *Rivers* court allowed this fictional deduction; like the courts in *Hardigan* and *Behague*, it bypassed the language at the beginning of 707(b)(2)(A)(iii) and went straight to the formula in subsection (I) of

(iii) ("the total of all amounts scheduled as contractually due to secured creditors"). [53]

## DISCUSSION

 Bankruptcy courts disagree on whether § 707(b)(2)(A)(iii) is ambiguous. [54] This Court finds no ambiguity in that subsection of the Code. The United States Supreme Court instructs courts to look to the plain meaning of a statute. [55] Unlike many other provisions of BAPCPA, the wording of § 707(b)(2)(A)(iii) is plain: the statute sets forth a formula for calculating the "average" amount of a "debtor's" "monthly payments on account of secured debts." [56] This language dictates that the first inquiry should be whether the "debtor" has any "monthly payments on account

**50.** *In re Behague,* 497 B.R. at 342. "Contractually due" is part of the formula for calculation of a debtor's average monthly expenses for secured debt, provided for in subsection (I) of § 707(b)(2)(A)(iii). Essentially adopting the reasoning in *Hardigan, supra,* the court went directly to the formula for calculating the average amount of a debtor's monthly secured debt payments under subsections (I) and (II) of § 707(b)(2)(A)(iii). It did not analyze the language in (iii) that makes the formula applicable to the "debtor's" payments.

**51.** *Id.* at 343. The court went on to rule that the case should be dismissed under the totality of the circumstances test under 707(b)(3) because even with the deductions for the phantom payments the debtor had enough net disposable income to pay a significant amount of her unsecured debt over the life of a Chapter 13 plan. *Id.*

**52.** *In re Rivers,* 466 B.R. at 560 (also distinguishing *Lanning* and *Ransom* as Chapter 13 cases).

**53.** *Id.* at 561, 566. In yet another decision from the same district in Florida, *In re Johnson,* 454 B.R. 882, 884–85 (Bankr.M.D.Fla. 2011), the issue was whether a Chapter 7 debtor could deduct the operating expenses for a third car, which he owned free and clear but which was driven by his eldest daughter. Quoting from *Lanning,* the *Johnson* court

highlighted that "Congress designed the means test to ensure that debtors repay creditors what they can afford to pay given their household income after allowing them set expense amounts. . . . " *Id.* (referring to the National and Local Standards). Although it did not reach a final ruling, the court stated that the purpose of the means test is "best implemented by interpreting the means test, consistent with the statutory text, to accurately reflect the debtor's particular circumstances. In this way, the object of the means test–that is, that debtors who *can* pay creditors *do* pay them–can best be achieved." *Id.* at 893–94 (emphasis in original) (citations omitted).

**54.** *See U.S. Trustee v. Navin (In re Navin),* 526 B.R. 81, 85–86 (Bankr.N.D.Ga.2015) (contrasting Northern District of Georgia precedent that looked to the "plain language" of the statute with *In re Fredman's* holding that the statute is ambiguous); *In re Johnson,* 503 B.R. 447, 450 (Bankr.N.D.Ind.2013).

**55.** *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

**56.** 11 U.S.C. § 707(b)(2)(A)(iii) (2014).

of secured debts." If the debtor has such payments, then the average of those payments is to be calculated based on the formula set forth in subsections (iii)(I) and (II).[57] If the debtor has no such payments, then the formula does not apply because there is nothing to average. As the *Thompson* court pointed out, the threshold question for application of § 707(b)(2)(A)(iii) is one of fact: does the debtor actually make "payments on account of secured debts?"[58] If the answer to that question is "no," then the inquiry should end and the formula does not apply.

This interpretation is consistent with the legislative history of the means test: it was added by BAPCPA to allow parties and courts to determine whether debtors can pay their unsecured creditors something in a Chapter 13, rather than wipe out all of their unsecured debt and walk away with a fresh start via a Chapter 7 discharge.[59] The Supreme Court's reasoning in *Lanning* and *Ransom*, that the means test is designed to "ensure that [debtors] pay creditors the maximum they can afford,"[60] should apply with equal force in Chapter 7 cases.[61] Congress intended the means test to approximate the debtor's reasonable expenditures on essential items. This can occur if a debtor is allowed a secured debt deduction only if he or she actually has an expense in that category.[62] This interpretation employs the "snapshot approach" while using actual facts, not fiction; it also encompasses strengths of rulings on all sides of the issue. This reading of the statute does not rely on the Debtor's statement of intentions, which is subject to change; nor does it require looking into a crystal ball to try to determine what the Debtor's financial circumstances may be going forward. Reading the statute the way Congress drafted it amounts to looking at the Debtor's true picture, or "snapshot" as of the petition date. Allowing a debtor to deduct payments she is not making is like looking at a "snapshot" of the debtor's finances that has been photoshopped to include the fictitious payments.

The means test is meant to mark the divide between Chapter 7 and Chapter 13. Debtors that cannot "pass" the means test must file a Chapter 13 petition if they want relief from their creditors. Following the plain language of § 707(b)(2)(A)(iii) will generate a uniform result: every debtor that is making no payments on account of a secured debt will be entitled to the same means test deduction: $0. A debtor whose prior mortgage payments were $10,000 will not gain a financial advantage over one whose prior mortgage payments were only $1,000. The Supreme Court has spoken: "the means test must be applied in light of the debtor's actual circumstances."[63]

## CONCLUSION

The payments the Debtor lists for the mortgage on her former homestead are *phantom* payments. The Debtor is

**57.** *Id.*

**58.** *In re Thompson,* 457 B.R. 872, 881 (Bankr. M.D.Fla.2011).

**59.** H.R. Rep. 109–31(I), at 36 (2005).

**60.** *Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 71, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011).

**61.** *See In re White,* 512 B.R. at 830; *In re Fredman,* 471 B.R. at 546.

**62.** *Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 70, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011).

**63.** *In re Johnson,* 454 B.R. 882, 889 (Bankr. M.D.Fla.2011) (citing to *Lanning* and *Ransom*).

not entitled to deduct those sums from her income under the means test fin order to calculate her eligibility for relief under Chapter 7, pursuant to § 707(b)(2)(A)(iii). The Debtor has not overcome the presumption of abuse arising under Section 707(b)(2), so this case should be dismissed unless the Debtor elects to convert to Chapter 13. It is unnecessary to address abuse arising under Section 707(b)(3).

For the reasons stated, it is

ORDERED:

1. The *United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. Section 707(b)(1) Based on Presumption of Abuse Arising Under 11 U.S.C. Section 707(b)(2) and Abuse Arising Under 11 U.S.C. Section 707(b)(3)* (Doc. 26) is GRANTED.

2. The Debtor shall have fourteen (14) days from the entry of this Order convert this case to Chapter 13, failing which this case shall be DISMISSED.

DONE AND ORDERED.