**In the Matter of Paul Terrence JOHNSON, Debtor.**

No. 13–40162.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division,
at Lafayette.

Dec. 12, 2013.

Juan A. Perez, Jr., Perez & Perez, Indianapolis, IN, for Debtor.

Ellen L. Triebold, Office of the United States Trustee, South Bend, IN, for U.S. Trustee.

### DECISION ON MOTION TO DISMISS

ROBERT E. GRANT, Chief Judge.

When it revised the Bankruptcy Code in 2005, Congress made significant changes to § 707(b) concerning the dismissal of a consumer debtor's chapter 7 case. *See,* 11 U.S.C. § 707(b)(1)-(6). Among other things: it eliminated the presumption in

favor of granting relief and reduced the standard for dismissal from "substantial abuse" to simply "an abuse," 11 U.S.C. § 707(b)(1); it then quantified the concept of "abuse" by creating a presumption that a case is abusive if the debtor's ability to pay meets a certain threshold, 11 U.S.C. § 707(b)(2)(A)(i); and established an elaborate test designed to determine whether or not the debtor's ability to pay meets that threshold. 11 U.S.C. § 707(b)(2)(A)(ii)-(iv). If it does, § 707(b)(2)(B)(i)-(iv) specifies precisely what the debtor must do to rebut that presumption. Additionally, in those situations where the presumption either does not arise or has been rebutted, the case may still be dismissed as an abuse after considering the debtor's "bad faith" or the "totality of the circumstances . . . of the debtor's financial situation." 11 U.S.C. § 707(b)(3). Whether by chance or design, through these and other changes to § 707(b), Congress significantly restricted the amount of discretion the court had under the previous version of the statute.

As the introductory paragraph might suggest, this matter is before the court on the U.S. Trustee's motion to dismiss this case as an abuse. The motion has been filed pursuant to both § 707(b)(2), as presumptively abusive, and § 707(b)(3)(B), as abusive based upon the totality of the circumstances; propositions the debtor denies. The issues raised by the motion and the debtor's objection to it have been submitted to the court for a decision based upon the parties' stipulation of facts and the briefs of counsel.[1] The U.S. Trustee bears the burden proving that relief under chapter 7 constitutes an abuse, see, *In re Hardigan*, 490 B.R. 437, 447 (Bankr.S.D.Ga.2013); *In re Perelman*,

419 B.R. 168, 177–78 (Bankr.E.D.N.Y. 2009), although it may or may not be aided by the presumption of § 707(b)(2)(A).

The first issue before the court is whether this case will be presumed to be an abuse under § 707(b)(2). Debtor's amended means test calculation claims a deduction for a monthly mortgage payment. With this deduction, the debtor's total allowed deductions exceed his "current monthly income" and there is no presumption of abuse. Yet, the debtor intends to surrender the property subject to the mortgage and so the U.S. Trustee contends the deduction is not permitted. If it is not, the presumption of abuse will arise and the debtor will be required to rebut it for the case to proceed. The issue of presumed abuse turns upon that one question: May a debtor claim a deduction for payments on secured debt where it intends to surrender the creditor's collateral?

Answering that question is a straightforward exercise in statutory construction. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("the starting point for interpreting a statute is the language of the statute itself."). When it devised the means test and the presumption of abuse in § 707(b)(2), Congress specifically addressed how secured debts should be handled at § 707(b)(2)(A)(iii). Payments on account of secured debts are to be included as deductions in the calculation. For amounts that are contractually due during the 60 months after the petition there are no exceptions, 11 U.S.C. § 707(b)(2)(A)(iii)(I), and it does not matter whether the debtor plans to retain or

---

**1.** The parties agree that the debtor has "primarily consumer debts" and so is an individual to whom § 707(b) applies. *See*, 11 U.S.C. § 707(b)(1). They also agree that he is an above-median income debtor and so subject to § 707(b)(2). 11 U.S.C. § 707(b)(7).

surrender the property, or what kind of property it may be.[2] *See, In re Rudler,* 576 F.3d 37, 52 (1st Cir.2009); *Lynch v. Haenke,* 395 B.R. 346, 349 (E.D.N.C.2008); *In re Rivers,* 466 B.R. 558, 565–68 (Bankr. M.D.Fla.2012); *In re Grinkmeyer,* 456 B.R. 385, 387–88 (Bankr.S.D.Ind.2011); *In re Vecera,* 430 B.R. 840, 842–45 (Bankr. S.D.Ind.2010); *Perelman,* 419 B.R. at 173–76; *In re Randle,* 358 B.R. 360, 362–63 (Bankr.N.D.Ill.2006). *Contra, In re Fredman,* 471 B.R. 540 (Bankr.S.D.Ill.2012); *In re Sterrenberg,* 471 B.R. 131 (Bankr. E.D.N.C.2012). The plain language of the statute is the only guide needed in this situation, *see, Connecticut National Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992); *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–42, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989), and arguments to the contrary ignore that fundamental tool. This case is not a presumptive abuse of chapter 7.

The Supreme Court's decisions in *Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) and *Ransom v. FIA Card Services, N.A.,* —— U.S. ——, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011) do not change that conclusion. Those two decisions both addressed how much a chapter 13 debtor had to pay in order to have a confirmable plan. Though the Court did adopt a reality based/forward looking approach to the issue, there is a significant difference between chapter 13, where the goal is to pay creditors out of projected disposable income, and chapter 7, where the goal is liquidation and discharge and the court is not required to project debtor's future resources. The reality based approach of *Hamilton* and *Lanning* accords quite well with the purpose of chapter 13—paying creditors out of future income—but it does not mesh at all well with the formula driven approach to the presumptive abuse of chapter 7. To apply it instead of the statutory formula of § 707(b)(2)(A) would be improper. *Rivers,* 466 B.R. at 566–69; *Perelman,* 419 B.R. at 175–76; *In re Sonntag,* 2011 WL 3902999, *3 (Bankr.N.D.W.Va.2011). Furthermore, if the court could disregard that formula anytime someone offered a creative argument for doing so, there would be precious little need for the secondary, "totality of the circumstances," approach to abuse of § 707(b)(3)(B). *See, Rudler,* 576 F.3d at 53 ("Congress may have intended the totality of the circumstances test to function as a backstop to catch those whose petitions are not presumptively abusive … but for whom a closer look at their actual financial situation shows that they have the means to repay their creditors under chapter 13 …")(Lynch, J., concurring); *Rivers,* 466 B.R. at 568–69 (§ 707(b)(2) and § 707(b)(3) are separate parts of a two-tiered inquiry); *Perelman,* 419 B.R. at 177 ("debtors that pass through [the initial filter of § 707(b) ] remain subject to the full analysis of § 707(b)(3)(B)."); *In re Jensen,* 407 B.R. 378, 384 (Bankr.C.D.Cal.2009) ("The totality of the circumstances test is best seen as providing a chance for the Court to refine the Means Test estimate."); *Sonntag,* 2011 WL 3902999, *4 (fact that the debtor will not be incurring an expense in the future is a proper consideration under § 707(b)(3)).

The fact that this case is not presumptively abusive under § 707(b)(2) does not mean that it is not an abuse of chapter 7. It only changes the way in which the U.S. Trustee must go about proving abuse. In-

---

**2.** Congress did make a distinction in the kind of property subject to a lien when it decided how to address an arrearage on secured claims. If the property is "necessary for the support of the debtor and the debtor's dependants" additional payments, beyond those contractually due after the petition, may be deducted. 11 U.S.C. § 707(b)(2)(A)(iii)(II).

stead of being able to take advantage of a presumption that arises by satisfying a statutory formula—a presumption the debtor is then required to rebut by proving "special circumstances" under § 707(b)(2)(B)—the U.S. Trustee must prove abuse directly, without the aid of any presumption, based upon "the totality of the circumstances ... of the debtor's financial situation." 11 U.S.C. § 707(b)(3)(B). *See,* Eugene R. Wedoff, *Judicial Discretion to Find Abuse Under Section 707(b)(3),* 77 Mo. L. Rev. 1035, 1040–41 (2006).

In many respects, the "totality of the circumstances" approach to abuse is the mirror image of the "special circumstances" the debtor must prove under § 707(b)(2)(B) to rebut the presumption of abuse when it arises. To rebut that presumption, the debtor is required to identify, justify, explain, and document additional expenses or adjustments to income that are not accounted for by the statutory formula and which reduce the money available to pay creditors below the statutory threshold. In just the same fashion, where the presumption of abuse does not arise, § 707(b)(3)(B) gives the U.S. Trustee the opportunity prove that there are aspects of the debtor's financial situation that are not accounted for by the statutory formula, but which, if considered, lead to the conclusion of abuse. These two provisions give each party the opportunity to have the question of abuse determined based upon the debtor's actual circumstances, using actual income and expenses, instead of through the mechanical, cookie-cutter approach of § 707(b)(2)(A). To rebut the presumption, the debtor must prove that a particular expense is actual, reasonable and necessary, and, when it is not aided by the presumption, the U.S. Trustee must prove the converse: that a particular expense is not actual, reasonable or necessary.

Proving abuse based upon the "totality of the circumstances" of § 707(b)(3)(B) does not change the standard for dismissal. It is still one of abuse. 11 U.S.C. § 707(b)(1). Neither does it completely change what constitutes an abuse. The ability to pay remains a primary and potentially sufficient consideration, although it is no longer the exclusive one and the court may consider other factors as well. *See, Grinkmeyer,* 456 B.R. at 389–90; *Perelman,* 419 B.R. at 176–77; *In re James,* 414 B.R. 901, 914 (Bankr. S.D.Ga.2008); *In re Mestemaker,* 359 B.R. 849, 856–58 (Bankr.N.D.Ohio 2007); *In re Ng,* 2011 WL 576067, *4 (Bankr.D.Hawai'i 2011). Furthermore, in assessing whether the debtor's ability to pay is abusive, the court should be guided by the same threshold Congress put in place in § 707(b)(2)(A). *James,* 414 B.R. at 915 ("the abuse threshold fixed in § 707(b)(2)(A) is a helpful tool for determining whether a case should be dismissed for abuse under § 707(b)(3)(B).... We should pay close attention to the standard, but not become slave to it."); *Mestemaker,* 359 B.R. at 858 ("the abuse threshold of § 707(b)(2) is a helpful guideline to Congress's intentions in giving content to the concept of abuse ..."). *See also, In re Pennington,* 348 B.R. 647, 652 (Bankr. D.Del.2006); *In re Burbol,* 2011 WL 890684 * 3 (Bankr.M.D.Pa.2011); Eugene R. Wedoff, *Judicial Discretion to Find Abuse Under Section 707(b)(3),* 77 Mo. L. Rev. 1035, 1046–47 (2006) *But see, In re Nockerts,* 357 B.R. 497, 506 (Bankr. E.D.Wis.2006) ("To apply the means test, dislike the result, and then examine the debtor's ability to fund a chapter 13 plan under § 707(b)(3), renders the means test 'surplusage.' "). In other words, an ability to pay that is abusive under § 707(b)(2) may also be abusive under § 707(b)(3)(B). The difference between the two provisions

is in how that ability is determined, using a statutory formula built around theoretical income and expenses or through an individualized analysis of the debtor's actual income, expenses, and financial situation.

The parties have stipulated that under a five-year chapter 13 plan, $170 per month will pay approximately 25% of the debtor's unsecured debt, $330 per month will pay 50%, $495 per month will pay 75%, and unsecured creditors can be paid in full with $656.87 per month. Debtor's schedules I & J indicate that his net monthly income exceeds his average monthly expenses by $12.61.[3] Although that excess is not high enough to meet the ability to pay threshold for abuse, the U.S. Trustee challenges three of the debtor's monthly expenses as excessive: a cell phone bill of $125; a cable/phone bill of $150; and a voluntary contribution of 12.5% of his gross pay ($706.25) to a 401(k) plan. Additionally, the debtor's budget includes a monthly installment of $200 on account of an auto loan which, since the balance due is only $826, will soon be fully paid. The U.S. Trustee argues that if/when these expenses are reduced or eliminated the debtor should be able to make sufficient payments to his unsecured creditors, perhaps even paying them in full, over the five-year life of a chapter 13 plan so that to grant relief under chapter 7 constitutes an abuse under § 707(b). Except for the retirement contribution, which the debtor defends by arguing that as a 52–year old truck driver, with less than $13,000 in retirement savings, he may have as little as ten years left before retiring and so needs to prepare for that day,[4] the debtor's brief does not address the U.S. Trustee's arguments concerning these expenses.

■ The totality of the circumstances analysis of § 707(b)(3)(B) is a fact sensitive and fact intensive inquiry. To successfully challenge particular expenses, the U.S. Trustee must prove that they are not actual, reasonable or necessary, and to answer those questions the court needs to know more than just how much the challenged expenses may be. The court must have something against which they can be measured. The evidence should also indicate what the expense is for, whether there are alternatives to it and how much those alternatives may cost. Only then can we determine whether the expenses are appropriate; whether they are reasonable and necessary. There is also a more fundamental question that needs to be addressed: "Reasonable and necessary to what?" Meeting the debtor's present needs? Upcoming vacation plans? Long term financial goals? Peace in the Middle East? An expense that is reasonably necessary for one purpose may be completely irrelevant to another. You need to know where you are going before you can figure out how to get there; so how that fundamental question is answered will have a significant impact on the analysis that follows.

■ The facts the court has been given regarding the challenged expenses are not

---

**3.** Those expenses do not include the mortgage payments on account of the property he plans to surrender. *See, Perelman,* 419 B.R. at 178 ("income made available to debtors as a result of surrendering encumbered assets is properly considered as part of a totality of the circumstances analysis . . . ").

**4.** In response the U.S. Trustee argues that these contributions are just a form of savings that should not be undertaken to the prejudice of creditors; that is essentially how the debtor has treated his 401(k) in the past, withdrawing his deposits to meet various expenses for himself and others; that his working life may be longer than the next ten years, and so he can scale back his contributions for a while, pay creditors, and still save something for retirement.

adequate to the task of evaluating them. As for the debtor's cell phone expense, we know only that it is $125 per month. We do not know what that $125 buys, what the debtor's reasonable needs for this service might be, what alternatives or options he might have to meet those needs or how much they may cost. The argument concerning the cable/phone expense suffers from a similar lack of information. We know only how much it is; not what that money buys, the availability of any alternatives or their cost. The challenged expense for the debtor's voluntary 401(k) contribution ($706.25 per month) stands on the same footing, although the numbers are admittedly larger. Nonetheless, the mathematical ability to fund a chapter 13 plan if retirement contributions are reduced does not prove abuse. *In re Tucker*, 389 B.R. 535, 541 (Bankr.N.D.Ohio 2008). Instead, the contributions themselves must be proven to be not reasonably necessary and to do that we must have a standard against which they can be measured. Here, that standard is missing. There is no specific evidence concerning what the debtor's future needs might be, the resources that may be available to meet them, or how changing the debtor's contributions will affect that availability;[5] and the fundamental question lying behind the entire inquiry is never even asked.

So, operating on what the stipulated facts do indicate, we know that, after the $826 car loan is fully paid, the debtor will have $200 per month available to pay unsecured creditors. While we may suspect that the other expenses in question (cell phone, cable/phone and 401(k) contribution) are high, those suspicions are not evidence and should not be substituted for competent evidence of their reasonable necessity; as a result, the U.S. Trustee has failed to prove that they are not reasonable or necessary. Nonetheless, the $200 per month that will soon become available is more than what is needed to pay unsecured creditors at least 25% of their claims and that ability, without more, is sufficient to make this case an abuse of chapter 7.

The U.S. Trustee's motion will be GRANTED and this case will be DISMISSED without further notice or hearing, unless, within fourteen days of this date, the debtor voluntarily converts to chapter 13.

---

5. What the court knows in this regard is that the debtor is a 52–year old truck driver, in good health, who has worked steadily for the last 3 years, with an adjusted gross income of $63,955 and $13,000 in retirement savings. That is not enough to be able to properly evaluate the reasonable necessity of the debtor's contribution.